THE CHICAGO DOCK AND CANAL COMPANY

*v.*

GWINTHLEAN H. KINZIE.

1.  PAROL EVIDENCE—*to identify lot in deed.*   Where the description of land in a mortgage was "water lot 36 in Kinzie's addition to Chicago, the dimensions and description of which will fully appear by reference to the map of said addition, now on file in the recorder's office of Cook county," and the plat as recorded contained no number 36, but showed lots numbered from 1 to 35 running from west to the east, leaving a triangular piece of ground east of water lot No. 35, and extending to the shore of Lake Michigan:   *Held*, that it was competent to show by parol that such triangular strip between lot 35 and the lake shore was known and recognized as water lot No. 36, and thus identify the lot described in the mortgage.

Syllabus.

2. ACCRETIONS—*when they pass to grantee of land.* Where land is conveyed bounded on one side by Lake Michigan, the line between the land and the water will form a boundary, and such line will follow the receding water, and the accretion thus formed will pass to the grantee, not as appurtenant to the land granted, but as a part of it. The rule is the same where a lot is described by reference to a recorded map or plat showing a boundary by the lake on one side.

3. PROCESS—*sufficiency of return.* The return upon a writ of *scire facias* to foreclose a mortgage was as follows: "The within A B *an* C D hath not anything in my bailiwick or *plac*, or by which I can give notice as I am within commanded, nor is the said A B *an* C D found in the same:" *Held*, that the words "bailiwick or plac" mean and should be read "county," and that the word "an" should be construed in its popular sense and disjunctively, as showing that neither of the defendants could be found, and that such a return upon two several writs properly issued gave the court jurisdiction.

4. SAME—*effect of a finding as to process and service.* Where a judgment of foreclosure on *scire facias* recites that two separate writs of *scire facias* issued in the cause have been returned *nihil*, and one of the writs found in the papers bears date subsequent to the date of the judgment, it will be presumed, in the absence of proof to the contrary, that there must have been another writ issued and returned *nihil*, which has been lost from the files or destroyed. This presumption is not overcome by the mere presence in the record of a defective writ or return.

5. SAME—*mistake in date not fatal in a collateral proceeding.* Where a writ of *scire facias* was dated May 21, 1848, the sheriff's return thereon was of the date of April 21, 1848, and judgment was rendered on May 4, of the same year, which contained a recital as to the process, showing it then to have been before the court: *Held*, that this was sufficient to show a mistake or clerical error in the date of the process, and that it was in fact issued more than ten days before the term at which the judgment was rendered, and the judgment could not be attacked collaterally on account of the error in the date.

6. EXECUTION—*sufficiency of evidence to show upon what judgment issued.* Where the records of a court are destroyed by fire, and resort is necessarily had to abstracts taken from the records to prove the existence and contents of a judgment, and of a sale on execution thereunder, and the memorandum relating to the execution does not state the date of the judgment, but such memorandum immediately follows that in relation to the judgment, which states the date of the judgment correctly, the two in connection will sufficiently show that the execution was issued on the proper judgment.

7. JUDICIAL SALE—*misrecital in deed of date of judgment.* A mistake in reciting, in a sheriff's deed for land sold on execution, the date of the judgment, upon which the execution issued, will not affect the validity of the title.

8. SAME—*variance as to amount of judgment.* A sale under execution many years after the proceedings were had, and after the destruction of the records of the court, was attacked collaterally on the ground of a variance between the date and the amount of the judgment, and the recitals in the certificate of purchase and the sheriff's deed as to the same. Two abstracts were offered in evidence, both of which showed the judgment to be for $1617.50, one stating and also for costs, but neither stated the amount of the judgment recited in the execution. The abstracts of the certificate of purchase and sheriff's deed both stated the amount of the judgment to be $1629.91¼: *Held*, that in the absence of proof of any other judgment between the same parties under which the sale could have been made, it was but fair to presume, under the peculiar circumstances of the case, that this difference was made up of the costs of the suit, and the variance should not be considered material.

APPEAL from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

Appellee filed her petition in the Superior Court of Cook county, on the 27th of March, 1874. It states: That the petitioner claims to be endowed of part of the north fraction of section 10, township 39 N., range 14 E. of 3d principal meridian, Cook county, Illinois, embraced within the following boundaries: beginning at the S. W. corner of lot 4 in block 8, in the Chicago Dock and Canal Company's subdivision of the original water lot 35, and accretions thereto, and all of block 8 and accretions, and that part of block 19 lying east of sub-block 2, all in Kinzie's addition to Chicago; running thence, by direct line, in a southerly direction to the S. W. corner of water lot 35, in Kinzie's addition to Chicago, at the Chicago river; thence easterly along the Chicago river to the shore line of Lake Michigan; thence northerly along said shore line to a point where the south boundary of Indiana street intersects said lake shore; thence by a direct line to the place of beginning.

The petition sets forth as the foundation of petitioner's claim the following: That in November, 1834, petitioner and Robert A. Kinzie were lawfully married; petitioner was the wife of Robert A. Kinzie from that time until his death, November 13, 1873. Robert A. Kinzie died intestate, leav-

27—93 ILL.

ing petitioner entitled to dower in her said husband's lands. Said Robert A. Kinzie was in 1837 seized in fee simple of the north fraction of section 10. Petitioner's right of dower in said lands was never released.

The land first above described, in which petitioner claims dower, forms a part of said north fraction of section 10, and the accretions thereto.

The Chicago Dock and Canal Company is in possession of said lands, and claims to own the same by title through Robert A. Kinzie. More than one month has elapsed since the death of Robert A. Kinzie, and defendant has not laid off petitioner's dower in said lands.

Then follows the prayer.

The answer of the Chicago Dock and Canal Company denies petitioner's claim to dower in said lands.

Admits that petitioner and Robert A. Kinzie were married in November, 1834, and that petitioner remained the wife of Robert A. Kinzie until his decease, in November, 1873.

Admits that petitioner is entitled to dower in the lands of which Robert A. Kinzie was seized during the marriage, and in which dower right has not been released or barred.

Denies that Robert A. Kinzie was, during said marriage, seized of the north fraction of section 10, described in the petition, but admits that said Kinzie, before his intermarriage with petitioner, was the owner of said north fraction of section 10, and about February 2d, 1833, subdivided said north fraction of said section into blocks, lots, streets and alleys, under the name of "Kinzie's addition to Chicago," and on February 22, 1833, filed for record a plat of said subdivision, which was recorded in book A of maps, pages 311 and 312, and in book 11 of maps, page 149. Defendant is unable to state whether said plat was accurate or not.

States that by said subdivision and plat block 19 of said Kinzie's addition was bounded on the north by Indiana street, on the east by Lake Michigan, on the south by Illinois street, and on the west by Sand street (now St. Clair street), and

block 8 was immediately south of block 19, and bounded on the north by Illinois street, on the east by Lake Michigan, on the south by North Water street, and on the west by said Sand street. Water lot 35 was north of the east portion of block 8, and was bounded on the north by North Water street, on the west by water lot 34, on the south by Lake Michigan, and, according to declarations of Robert A. Kinzie, on the east by Lake Michigan.

Admits that since the recording of the plat of Kinzie's Addition, it was claimed there was left on the east side of the north front of water lot 35, and between the north of said water lot and the lake, a small, triangular piece of land, bounded on the north by North Water street, on the south and east by the lake, on the west by water lot 35, the north line of said piece being 24 feet, and the west line 126 feet in length. Denies that there was at the time of recording said plat any such triangular piece of land, or any land between water lot 35 and the lake.

Says that the tract in which petitioner claims dower embraces the east part of water lot 35, and east parts of blocks 8 and 19, whether formed by accretions or otherwise, lying between the same and the lake, and north of the present channel of the Chicago river, of which the accretions are now many times larger than the ground embraced in said boundaries appearing on the original plat of Kinzie's addition, which accretions have been developed and made valuable by defendant at an expense of over $250,000.

The answer further alleges that said Robert A. Kinzie, prior to his marriage with the petitioner, and on the 25th day of February, 1833, by deed of that date, conveyed water lot 35 and block 19 in Kinzie's addition, according to the plat of said addition then on record, to John H. Kinzie, under whom defendant claims title, and after that, and prior to said marriage, to wit: on February 26th, 1833, by deed of that date, said Robert A. Kinzie conveyed block 8 of Kinzie's addition to David Hunter, through whom the defendant

claims title thereto. Defendant insists that by such deeds all the interest of said Kinzie then held, or to be acquired in said lands, passed to his grantees, and has become vested in defendant; that said Kinzie did not thereafter become revested with the title to said lands, and was not at the time of his intermarriage with petitioner, or thereafter, seized of any estate, or interest therein, entitling petitioner to dower in any part thereof, or in the accretions thereto, and defendant will claim the same benefit of said conveyances and the facts set forth as though pleaded specially in bar of petitioner's claim of dower.

Defendant says, as to petitioner's claim for dower in the accretions to said lot 35, that after the accretions along the shore of the lake had accumulated so as to form a considerable body of land to the east of the original boundary of water lot 35, the piece of land north of Water street, and east of a line parallel with and 60 feet distant, to the west line of lot 35, became generally known as water lot 36, Kinzie's addition, and on or about the 18th of January, 1838, said Robert A. Kinzie, and petitioner, his wife, by mortgage acknowledged in due form, have barred petitioner's right of dower therein, conveyed with other property said land by description of "Water lot thirty-six in Kinzie's addition to Chicago," with a reference to the map of said addition, then of record, for dimensions and situation of said lot, to Frederick R. Backus and Nathaniel Witherell, as security for $1,000, due from said Kinzie to them—which mortgage was recorded April 23d, 1838, in book P of Mortgages, page 362, and this indebtedness not being paid at maturity, said Backus and Witherell afterwards, on December 10th, 1847, commenced a proceeding by *scire facias* in the Cook county court to foreclose said mortgage, and on December 14th, 1847, a writ of *scire facias* issued out of said court, returnable to the then next February term, commanding said Kinzie and petitioner to appear in said court and show cause why said mortgage should not be foreclosed for non-payment of said

indebtedness; and afterwards, on January 31st, 1848, said writ was returned into court by the sheriff with his indorsement thereon, certifying that said Kinzie and said petitioner are not found in his county; and afterwards, on April 21, 1848, an alias writ of *scire facias* issued, returnable to the May term, which alias writ was returned before the next day of said May term by the sheriff, with his indorsement certifying that said Kinzie and said petitioner are not found in his county; and afterwards, at said May term, to-wit, on May 4th, 1848, it appearing that two writs issued in said cause had been returned *nihil* and said Kinzie and petitioner, his wife, being called, and defaulted of record, said court thereupon assessed the damages upon said mortgage, and found due $1617.56, principal and interest, and thereupon ordered that said Backus and Witherell have execution against said water lot 36 in Kinzie's addition to Chicago, and other property described in said mortgage, for payment and satisfaction of said amount; and defendant says that afterwards, on June 16th, 1848, in pursuance of such order and special writ, execution was issued out of said court against said water lot 36, and other property, for the sum aforesaid, to the sheriff of said county, who levied upon said lot and other property therein described, and after due notice, offered the same for sale at public auction, and said water lot 36 was struck off and sold to one Benjamin Jones for $1200, and said sheriff executed a certificate of sale as required by law; and said lot not having been redeemed, said sheriff afterwards, on July 29, 1850, made a deed to said Jones of said water lot 36, and defendant claims that by the execution of said mortgage, the foreclosure thereof, and the sale and conveyance thereunder, said Robert A. Kinzie and petitioner were divested of all right, title and interest in and to the said water lot 36, that is to say in and to all the land lying east of water lot 35, in said Kinzie's addition, and between said lot and the waters of lake Michigan, known as water lot 36, whether the same was wholly formed by accretions subsequent to the

laying out of said Kinzie's addition or not, and that said petitioner is barred by reason thereof from claiming dower in said lot and the accretions thereto.

Defendant further says that said Kinzie was not thereafter re-invested with any title or interest in said land, and that the title thereto subsequently by mesne conveyance became vested in defendant, and defendant claims the same benefit of said facts as though specially pleaded in bar of petitioner's claim of dower in said land lying east of original lot 35; and defendant, expressly denying that petitioner has any dower or right of dower in any portion of the land described in her said petition, admits that it is the owner of all said tract of land, and that at the time of filing said petition more than two months have elapsed since the death of said Robert A. Kinzie, and further says that after acquiring title thereto, and about the year 1869, defendant re-subdivided the same into lots, blocks, streets and alleys under the name of the Chicago Dock and Canal Company's subdivision of original water lot 35 and the accretions thereto, of all of block 8 and accretions, and of that part of block 19 lying east of sub-block two (2), all in Kinzie's addition to Chicago, and the map or plat thereof, duly certified and acknowledged, was afterwards recorded in the recorder's office of Cook county.

The decree finds that complainant is the widow of Robert A. Kinzie, deceased, and that complainant and Robert A. Kinzie were married in November, 1834; that said Kinzie died December 13, 1873; that on November 22, 1833, said Kinzie subdivided said fractional section 10 into lots and blocks and recorded a plat thereof; that at the time of such subdivision, there was a triangular strip of land on the east side of water lot 35, as the same was laid down on said plat, which was not numbered on said plat, but was bounded therein on the north by North Water street, on the west by water lot 35, and on the east and south by Lake Michigan, as it then ran. That since the making and recording of said plat, a tract of land has been formed by gradual and imperceptible accre-

tions on the east side of and adjoining said triangular piece of land by the recession of the waters of Lake Michigan. That on March 9, 1837, Robert A. Kinzie obtained a patent from the United States of all of fractional section 10 aforesaid. That during said marriage said Robert A. Kinzie was seized in fee of all that fractional section not conveyed by him before said marriage. That said Kinzie was seized in fee during said marriage of all that triangular piece of land last described, and bounded as follows: beginning at the north-east corner of water lot 35 in ·Kinzie's addition aforesaid, and running thence southerly along the eastern boundary of water lot ·35 300 feet, thence northerly on a line following the direction of the shore of Lake Michigan, as it formerly ran, to a point on the southern boundary of North Water street 24 feet east of the north-east corner of said water lot 35, thence west along said north boundary of North Water street 24 feet to the place of beginning, together with all the accretions that had or might form east thereof and adjoining thereto, and that he was also seized in fee simple of an estate of inheritance of the south half of Water street to the centre of said street opposite the same, subject to the right of user of the city of Chicago. That North Water street was not continued as a street on said accretions; that during said marriage, and on January 18, 1838, said Kinzie and petitioner conveyed to Frederick R. Backus and Nathaniel Witherell, Jr., by mortgage, said triangular piece of land above described, with other property, to secure payment of $1000. That at that time there had been formed east of and adjoining said triangular piece of land, about 400 feet of new land by gradual and imperceptible accretions from the waters of Lake Michigan; that said accretions were not included in said mortgage by the description therein contained. That subsequently said mortgage was filed in the county court of Cook county by said Backus and Witherell, and a writ of *scire facias* issued thereon against said Kinzie and petitioner, and subsequently such proceedings were had therein that a judgment was obtained, and special execution

issued against the property described in said mortgage, and a sale thereof made and a sheriff's deed issued therein to one Benjamin Jones, and that said foreclosure proceedings and the judgment, execution, sale and sheriff's deed to Jones were all irregular and void, and that they be set aside and petitioner permitted to redeem from said mortgage on payment of her proper and proportionate share thereof. Decrees that petitioner be endowed of all the accretions east and adjoining said triangular piece of land above described, and bounded as follows: commencing at a point on the S. line of W. Water street 24 feet E. of the N. E. corner of water lot 35, as laid out in the plat of Kinzie's addition to Chicago, thence N. 27 feet to the centre of N. Water street, thence E. to the W. boundary of Lake Michigan, thence southerly along the line of Lake Michigan, as it now is, 327 feet more or less to a point directly E. of a point on the E. line of said water lot 35, 300 feet S. of the N. E. corner thereof, thence W. to said point on the E. line of said water lot 35, 300 feet S. of said N. E. corner thereof, distant in a northerly direction in a straight line to a point on the S. line of said N. Water street, 24 feet E. of the said N. E. corner of said water lot 35, being the place of beginning. Further decrees that said petitioner be endowed of said triangular strip of land hereinbefore described, on redeeming the same from said mortgage. That said foreclosure proceedings in said county court, and the judgment, execution, sale and the sheriff's deed to Benjamin Jones, are all irregular and void, and that petitioner be allowed to redeem the property covered by said mortgage on payment of her proportionate share thereof.

And it appearing that the parties have waived the appointment of commissioners, and have agreed that in lieu of the assignment by commissioners, certain lands may be set off to petitioner for life, as follows: it is decreed that there be set off to petitioner, for life, said lots 35, 36 and 37 in said Chicago Dock and Canal Company's subdivision, and that petitioner have possession thereof, and that she recover the sum of $1500 as damages for detention of dower,—that the same be charged

upon said premises.    That defendant be allowed an appeal to the Supreme Court on bond of $2500, with certificate of evidence in thirty days.

Mr. JNO. N. JEWETT, for the appellant.

Messrs. CAULFIELD, PATTON & HONORE, and Mr. GEO. C. CHRISTIAN, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Two questions arise upon this record: 1st. Is the property in which appellee claims dower, described in the petition as "part of the north fraction of section 10, township 39 N., range 14 E. of 3d principal meridian, Cook county, Illinois, embraced within the following boundaries: beginning at the S. W. corner of lot 4 in block 8, in the Chicago Dock and Canal Company's subdivision of the original water lot 35, and accretions thereto, and all of block 8 and accretions, and that part of block 19 lying east of sub-block 2, all in Kinzie's addition to Chicago, running thence by direct line in a southerly direction to the S. W. corner of water lot 35, in Kinzie's addition to Chicago, at the Chicago river, thence easterly along the Chicago river to the shore line of Lake Michigan, thence northerly along said shore line to a point where the south boundary of Indiana street intersects said lake shore, thence by a direct line to the place of beginning," included in the mortgage executed by Robert A. Kinzie and appellee, his wife, to Frederick R. Backus and Nathaniel Witherell, Jr., on the 18th of January, 1838?

2d. If it *is* included, are the proceedings to foreclose that mortgage void as found by the decree below?

1st. The property described in the mortgage is "water lot 36 in Kinzie's addition to Chicago,—the dimensions and description of which will fully appear by reference to the map of said addition now on file in the recorder's office of Cook county."

Robert A. Kinzie entered the north fraction of section 10, being that portion of fractional section 10 lying north of the Chicago river, on the 7th of May, 1831; and early in February, 1833, he laid out therein Kinzie's addition to Chicago, and filed the map or plat of that addition, in the recorder's office of Cook county, on the 22d day of the same month. This map, it appears, was again recorded, the last record exhibiting some difference of lines and measurement from the first, but none that are of any consequence to the present controversy. The original map and records having been destroyed in the great fire of October, 1871, copies or tracings from the records, that had been made for purposes foreign to the present case, were given in evidence. By them the portion of the addition under consideration is shown by the plat on the page following, (427.)

Before his marriage with appellee, Robert A. Kinzie, on the 25th of February, 1833, conveyed block 19 and water lot 35 to John H. Kinzie, and on the next day he conveyed block 8 to David Hunter, and there is in the evidence no foundation for a claim of dower in behalf of appellee in the property thus conveyed.

The water lots were numbered from west to east, and it will be observed there is no number 36, but next east of No. 35 there is a vacant strip, of a triangular shape, unnumbered, extending from No. 35 to the lake shore, which is the property in controversy. When the addition was laid out, this was about 24 feet in width on Water street, and extended some 300 feet on the east line of lot No. 35. It is also contended by counsel for appellee, and may be conceded, that the south line of Water street was not extended east beyond the east line of lot No. 35.

In the year 1834, Chicago river was straitened, at and near its mouth, by cutting through the sand-bar, and constructing piers, etc., and this caused accretions to form rapidly, north of the river and on the east side of this addition; and these accretions now, partly by natural causes and partly by artifi-

PLAT OF PART OF KINZIES ADDITION TO CHICAGO.

428        Chicago Dock & Canal Co. *v.* Kinzie. [Sept. T.

Opinion of the Court.

cial means, extend out into Lake Michigan about one-half mile from what was the shore when this addition was laid out.

It is proved that after the accretions became considerable to the east of lot No. 35, the land lying east of that lot was commonly known as water lot No. 36.

Fernando Jones says: "The water lots in Kinzie's addition were numbered from 1 to 35, from west to east. Outside of lot No. 35, there was what was popularly known as lot 36. That was so described by my father in the lease, and by Robert Kinzie in a mortgage." *   *   * Alexander Wolcott, in speaking of the formation of accretions, mentions "water lot No. 36." On cross-examination, he says: "By water lot 36 I mean what is outside or E. of lot 35. Think it was known as water lot 36." Mahlon D. Ogden says: "Have resided in Chicago 42½ years. *   ° *   * Have been familiar with the plat and premises known as Kinzie's addition ever since I have been here. The water lots in Kinzie's addition are numbered 1 to 35, from W. to E. Have been familiar with the boundaries of water lot 35. The piece of land E. of water lot 35 was called water lot 36, almost as long ago as I can remember."

This evidence sufficiently identifies the land intended to be conveyed by the mortgage, and of its admissibility there is no question. See *Colcord* v. *Alexander,* 67 Ill. 581. We shall, therefore, read the mortgage precisely as if the vacant and unnumbered lot of ground east of water lot No. 35 had been numbered upon the original plat or map of Kinzie's addition to Chicago, water lot No. 36.

This seems to be conceded by counsel for appellee, but they contend that accretions can not pass under the description in the mortgage—that the words, "the situation and dimensions of which will fully appear by reference to the map of said addition," etc., limit the land conveyed to that to be found within the three lines shown on the map.

We are not convinced by the ingenious and able argument of counsel that this position is sound.

By reference to the map "the situations and dimensions" of the land would appear to be, that land bounded on the west by water lot number 35, and on the east by Lake Michigan. To ascertain its eastern boundary, it would be necessary to ascertain where was the line between the land and the lake; and since the accretions became a part of the land to which they were attached, it would necessarily follow that that line would follow the receding lake to the east. The accretions do not pass as appurtenant to water lot 36, but as a part of that lot, the same as that part adjoining water lot No. 35, or any other part of the lot.

Our conclusion is, that the property before described in which appellee claims dower is included in the mortgage executed by Robert A. Kinzie and appellee, as his wife, to Frederick R. Backus and Nathaniel Witherell, on the 18th of January, 1838.

2d. The indebtedness secured by the mortgage not having been paid, on the 10th of December, 1847, the original mortgage and a precipe for a writ of *scire facias* thereon were filed in the office of the clerk of the Cook county court, a court of general jurisdiction. As shown by the abstract in evidence, a writ of *scire facias* for a statutory foreclosure of the mortgage was thereupon issued out of that court, under date of December 14, 1847, returnable to the then next February term of the court. The return of the sheriff indorsed on this writ is as follows:

"The within named Robert A. Kinzie, an G. H. Kinzie, hath not anything in my bailiwick, or plac, or by which I can give notice, as I am within commanded, nor is the said Robert A. Kinzie, an G. H. Kinzie found in the same.

*Jan'y* 31, 1848.                                    I. COOK, *Sheriff.*
                                                    By John Beach, Deputy."

On the 9th day of February, 1848, there was an order of court entered, continuing the cause to the next term of court,

and directing that an alias *scire facias* issue, returnable thereto. An alias writ is found among the files, bearing date May 21, 1848, returnable on the "first Monday of May next." The return thereon is as follows:

"The within named Robert A. Kinzie an G. H. Kinzie hath nothing in my bailiwick where or by which I can give notice, as I am within commanded, nor is the said Robert A. Kinzie and G. H. Kinzie found in the same.

*April 21st,* 1848.                    I. COOK, *Sheriff.*
                              By John Beach, Deputy."

On the 4th of May, 1848, it appears judgment was rendered on the *scire facias.* The material part of the recital therein is as follows:

"This day come the plaintiffs, by their attorney, and it appearing to the court that two separate *scire facias* issued herein against the said defendants have been returned *nihil,* and the said defendants, being solemnly called, come not, nor any one for them, but herein fail and make default, which is ordered to be entered. Therefore," etc.

And a special execution was directed to be issued against "Water lot 36, in Kinzie's addition to Chicago, the dimensions and situation of which will fully appear by reference to the map of said addition, now on file in the recorder's office of the county of Cook," and other property described in the mortgage.

Special execution was issued upon this judgment June 16, 1848, which was afterwards returned, with this indorsement thereon: ·

"The within execution satisfied in full, by the sale of real estate within described, on the 24th day of August, 1848, as per certificate.                    I. COOK, *Sheriff.*
                              By John Beach, Deputy."

A certificate of sale, dated August 24, 1848, for the property in controversy, following the description in the mortgage and special execution, was issued by the sheriff to Benjamin Jones, and a deed of the same property, by the same descrip-

tion, was executed by the sheriff to the said Jones on the 29th day of July, 1850, and recorded in the proper office on the 5th of August, 1850.

Appellee objects that the return on the *scire facias* is insufficient. The words "bailiwick" or "plac" simply mean, and should be read, "county." 1 Bouvier's Law Dict. 155. But counsel insist the word "*an*" shall be taken conjunctively and construed strictly, and hence it may be true one was not in the county, while the other was. This would be to shut our eyes to the plain and obvious meaning intended by the use of this language. It was evidently used by one not skilled in the niceties of verbal criticism, and should be construed in its popular sense, when used in such a connection. In that sense "*an*" is to be read disjunctively.

But the objection most earnestly pressed by appellee, against the judgment on the *scire facias*, is that there were not two returns *nihil*, before judgment was returned.

The second writ, we have seen, bears date *May 21st*, 1848, but the return indorsed bears date *April 21st*, 1848, and the judgment was rendered on the 4*th day of May*, 1848.

There are two views that may be taken of this. First: If the second writ was before the court when the judgment was rendered, May 4th, 1848, it is clear the mistake in date is in the issuing of the writ, and not in the return, and the mistake being in the date of the writ, the return shows the writ must have been issued on or before the 21st of April, 1848—ten days before the first day of the term of court at which the judgment was rendered, and so it is sufficient.

On the other hand, if that writ was not before the court when the judgment was rendered, since it recites that "two separate *scire facias* issued herein against the said defendants have been returned *nihil*," there must have been another *scire facias* issued and returned *nihil*, which has been lost from the files or destroyed. *Miller* v. *Handy*, 40 Ill. 448; *Turner et al.* v. *Jenkins*, 79 id. 228 ; *Mulvey* v. *Gibbons et al.* 87 id. 367. In the latter two cases it was held that where the court, in its

judgment or decree, recites that there was proper service, this recital is not disproved by the mere presence in the record of a defective writ or return.    But, since we are of opinion, if it is to be presumed that the writ bearing date *May* 21*st*, 1848, was before the court on the 4*th day of May*, 1848, when the judgment was rendered, the return sufficiently shows that the date of the writ is a clerical error, and that it was, in fact, issued more than ten days before the first day of the term at which the judgment was rendered, and so there is no necessity for the application of the principle.

Another objection urged, is that the execution recites a judgment obtained at the *June* term, 1848, instead of the *May* term of that year, and that the judgment, as rendered, was for $1617.50, and costs, but the execution recites a judgment for $1629.91¼, and costs.

The records of Cook county having been destroyed by the great fire of October, 1871, the only evidence that was possible, of these proceedings, was that furnished by the abstract offices.

The execution was issued June 16, 1848.    The date of the judgment is not stated in the memorandum relating to the execution.    The memorandum of the execution, however, immediately follows that in relation to the judgment, which gives, correctly, the date of the judgment.    Taking the two together, it sufficiently appears that the execution was issued on the proper judgment.    The abstract of the sheriff's deed recites a judgment rendered at the *June* term, 1848, instead of the *May* term.    This is evidently a mistake, probably of the abstractor, and does not affect the validity of the title. *Phillips* v. *Coffee*, 17 Ill. 157.

Two abstracts were in evidence, and they both, in stating the amount for which judgment was rendered, state it to be $1617.50.    In one of them nothing is said of costs in connection with the judgment, and in the other, immediately following the statement of the sum, are the words, "as also for their costs."    In neither abstract is the amount of the judgment

stated in the memorandum relating to the execution, but in the abstract of the certificate and deed, both state the amount of the judgment at the sum of $1629.91¼. In the certificate it is " $1629.91¼, and costs of suit."

We think it but fair to presume, under all the circumstances, that this difference is made up of the costs of suit. The abstracts showing the condition of the title would have shown if there had been another judgment which had been a lien on this property, yet nothing of the kind appears. The question is purely one of identity. Was the sale, etc., under this judgment? In view of the great lapse of time and the entire destruction of the original records, and in the absence of any proof that there was any other or different judgment under which it is probable the sale could have been had, we think public policy requires we should hold the variance immaterial.

On the whole, we think the decree below should be reversed, and the cause remanded, with directions to that court to enter a decree dismissing appellee's petition.

And it will so be ordered.

*Judgment reversed.*