June Term, 1861.

WEISEGER et al.
v.
WHEELER et al.

WEISEGER and others vs. WHEELER and another.

A contract made in November between A of *Milwaukee* and B & Co. of *Louisville*, for the sale of 1000 barrels of pork " packed at Milwaukee or Chicago," at a certain price to be paid on delivery, contained a stipulation that the pork should be delivered during the next December, January or February at the seller's option, "and at any warehouse in the city of Milwaukee or in the city of Chicago which the purchasers might appoint," in quantities of not less than 500 barrels; and it was agreed that the seller should give to the purchasers "seven days written notice of his intention to deliver said pork or any portion thereof." *Held*, that the intention of the parties was, that the city in which the pork might be packed should be the place of its delivery, the purchasers having the right only to designate the warehouse in such city where they would receive it; and that the seven days notice to be given by the seller, of his intention to deliver the pork, was to precede the designation by the purchasers, of the warehouse at which the delivery should be made.

Where a person entered into a contract in the name of another, as his agent, for the purchase of goods to be delivered at a future day, and gave his own guaranty for the performance of the contract by his principal, and the principal ratified the contract and brought suit against the vendor for his failure to deliver the goods, the latter is not in a condition to take advantage of an original want of power in the person acting as agent, to bind his principal.

APPEAL from the Circuit Court for *Milwaukee* County.

This action was upon a contract dated November 10, 1858, which, after reciting that *Wheeler* (of Milwaukee), thereby

June Term, 1861.

WEISEGER et al.
v.
WHEELER et al.

bargained and sold to *Weiseger & Co.* (of Louisville, Ky.), 1,000 barrels of mess pork "packed at Milwaukee or Chicago," at $14 50 per barrel, to be paid on delivery, proceeded as follows: "said pork to be delivered to the said parties of the second part (*Weiseger & Co.*), during the months of next December, January and February, at the seller's option, and at any warehouse in the city of Milwaukee, or in the city of Chicago, which the parties of the second part may appoint; said pork to be delivered in quantities of not less than five hundred barrels. And it is agreed that the party of the first part shall give to the parties of the second part, seven days written notice of his intention to deliver said pork or any portion thereof." The contract was signed on the part of the plaintiffs, "*Weiseger & Co.*, by Waller & Co." Waller & Co. guarantied the performance of the contract by the plaintiffs, and the defendant *Weeks* guarantied its performance by *Wheeler.* The complaint, after setting forth the contract, alleged that, although the plaintiffs were always ready and willing to perform their part thereof, the defendant did not, during said months of December, January or February, deliver any portion of said pork to the plaintiffs, or give the plaintiffs any notice of an intention to deliver it; and that at the expiration of the time fixed for its delivery, the pork was worth $17 00 a barrel at, &c., and so the plaintiffs had sustained damage, &c. The answer was a general denial.

On the trial the defendant objected to the reading in evidence of the contract set forth in the complaint, but the court admitted it, "subject to the right on the part of the plaintiffs to prove a waiver by the defendants of the designation of the place" where the pork should be delivered. For the purpose of showing that it was the understanding of the parties that the seven days notice to be given by *Wheeler*, of his intention to deliver the pork, was to precede the designation of the warehouse by the plaintiffs, some evidence, consisting in part of correspondence between them, was introduced by the plaintiffs, subject to objection, and other testimony was offered by them for the same purpose and excluded. The plaintiffs proved that the kind of pork referred to in the contract, was worth $17 25 to $17 50 a barrel on the 28th of

,ruary, 1859, in Milwaukee and in Chicago. On motion the defendants, a judgment of nonsuit was entered.

Brown & Ogden, for appellants, contended that the intention of the parties, to be gathered from the face of the contract was, that Wheeler might pack and deliver the pork either at Milwaukee or at Chicago, at his option; that the city having been so determined, the plaintiffs might select the warehouse in that city at which the delivery should be made; but could not appoint the warehouse until Wheeler had notified them of his intention to deliver, and which city he had selected for that purpose. 2. If, however, the plaintiffs were to choose both the city and the warehouse at which the delivery should be made, the seven days notice by Wheeler of his intention to deliver, was to to precede the designation of the place of delivery. The notice was intended for the protection of the plaintiffs, that they might be prepared to receive and pay; but they did not agree to select a place, but merely reserved the privilege of doing so. If the defendants could not deliver until the plaintiffs had first appointed the place of delivery, the latter might have entirely prevented a delivery, if a fall in the price of pork had made it their interest to do so, and the defendants would have had no remedy. 3. If the contract had been silent on the subject, the vendees would have had the right to select any place for delivery, but would not have been obliged to do so. It is the duty of the vendor to seek the vendee and ascertain the place he has selected for the delivery; and if the vendee refuses to select, he is deemed to have waived his right in that respect, and the vendor may himself select the place of delivery, notifying the vendee. Fleming vs. Potter, 7 Watts, 380; Savary vs. Goe, 3 Wash. C. C. R., 140; Howard vs. Miner, 20 Me., 325; Bixby vs. Whitney, 5 Greenl., 192; 4 Shep., 49; 3 id., 470; 3 Day, 327; 7 Johns., 461; 5 Cow., 516; 10 East, 533. And this is applicable as well to cases where the right is reserved by express contract as where it is implied by law. Peck vs. Hubbard, 11 Vt., 612; Currier vs. Currier, 2 N. H., 75.

Henry F. Prentiss, for the respondents, argued, 1. That the plaintiffs had not shown that Waller & Co. had any au-

thority to make the contract on their behalf. 2. The com plaint does not aver that the plaintiffs appointed a warehouse in Milwaukee or Chicago where the pork should be delivered. Such appointment was a condition precedent to the delivery, or notice of intention to deliver; and where damages are sought for the breach of an executory contract, if there was a condition precedent for the plaintiff to perform, he must aver and prove a performance or an excuse for the non-performance of it; or if the covenants are mutual and dependent, he must aver a performance or tender thereof. It is not enough to aver that he was ready and willing to perform. *Raynay vs. Alexander*, Metcalf's Ed. of Yelverton's R., 76; *Collins vs. Gibbs*, 2 Burr., 899; *Johnson vs. Reed*, 9 Mass., 76; 19 Ohio, 347; 26 Vt., 109; 20 Johns., 130; 11 Wend., 48; 3 Denio, 363; 2 Coms., 408; 4 Seld., 508; 1 Kern., 453; 2 Pick., 155; 5 Wis., 125; *Hopkins vs. Shull*, Western Law Monthly for May, 1860, p. 260, and cases there cited. Several other points were made, which are noticed in the opinion of the court.

June 18

*By the Court*, DIXON, C. J. The respondents are in no position to take advantage of an original want of power on the part of Waller & Co. to execute the agreement as agents of the appellants, if such want of power were shown. At the time of its execution Waller & Co. guarantied its performance by the appellants as their principals, and upon that guaranty the respondents must be presumed to have acted. The appellants never repudiated, but on the contrary ratified and confirmed it. If there were no other act, the commencement of this action under their authority and direction ought to be regarded as sufficient for that purpose.

It is obvious to us upon the face of the agreement, and without the explanatory evidence given and offered by the appellants, that the seven days written notice to be given by the respondent *Wheeler*, of his intention to deliver the pork, was to precede the appointment by the appellants of the warehouse at which they would receive and pay for it. The privilege of delivering it at a warehouse in either of the cities of Milwaukee or Chicago, was evidently intended for

June Term, 1861.

WEISEGER et al.
v.
WHEELER et al.

*Wheeler's* benefit, and designed to give him the choice of the place of delivery, leaving it for the appellants, if they chose, to designate the particular warehouse. The grammatical construction of the sentence indicates this intention: "Said pork to be delivered to the said parties of the second part [the appellants] during ⸱⸱⸱ months of next December, January or February, at the seller's option, *and* at any warehouse in the city of Milwaukee, or in the city of Chicago, Illinois, which the parties of the second part may appoint." A fair construction of this language warrants the conclusion that it was not the design to limit *Wheeler's* option to the matter of time, but that he might also select the place, being restricted as to the particular point of delivery within the city which he might choose, to some warehouse which the appellants should have the right to appoint. It is true that the parties might have used language which would have expressed their ideas more clearly and explicitly, and that under other circumstances that used might sustain a different construction. But looking to the whole agreement and the position of the parties, we think that this was clearly their intention, and when that is ascertained it becomes a governing principle in the interpretation of contracts. Particular words and sentences must be so construed as, if possible, to subserve the intention of the parties as shown by the whole instrument. If we were to say that the power of appointment referred to the city and not to the warehouse, the latter would be left altogether uncertain, and to be selected by *Wheeler* without previous notice to the appellants. This would defeat one plain object of the parties, which was to have some previously ascertained warehouse, within one city or the other, at which they should meet to transact the business and perform the stipulations of the agreement. It would likewise violate their intentions in another and more important particular. They contemplated that the pork would be packed in Milwaukee or Chicago, or a part in one place and a part in the other. The agreement expressly provided that it should be so packed. From the nature and quantity of the article and the season and mode of delivery, it is clear that they intended the place of packing should be the place

of delivery. Certainly *Wheeler* never supposed that if he packed and gave notice of his readiness and intention to deliver the pork at Milwaukee, he was bound to transport it to Chicago upon the appellants' designating that as the place at which they would receive and pay for it. Nor could he have believed himself liable to deliver at Milwaukee, pork packed in Chicago, upon a like designation. If such demand had been made, we think it would have been most strongly resisted by him; and rightly too, for such never was his intention nor that of the appellants. The language of the agreement would not have authorized it.

If the right of appointment be held to include both the city and the warehouse, the objection still continues. *Wheeler* would have been obliged, upon receiving notice to that effect, to have transported the pork from one city to the other, contrary to the manifest understanding of the parties.

It follows, therefore, that the appellants could not have been in default for not appointing a warehouse, or for not being present to receive and pay for the pork, until *Wheeler* had first designated the place and notified them of his intention to deliver, which it was his duty to do within the time required by the agreement.

Judgment reversed, and a new trial ordered.