The Wisconsin Marine & Fire Ins. Co. Bank vs. Wilkin and others.

agreement, but this was not really the important question in the case. The proof which was offered tended to show that after the defendants' subscription was received the corporation went on, and sold out its entire authorized stock to others, with the consent of the defendants, and received full pay therefor. ' If this was the fact, it is impossible to see how those other subscribers could now be deprived of their stock, either by the corporation or by the defendants. If they cannot be deprived of their stock, then certainly the defendants ought not to be compelled to pay for stock which cannot be issued without making an illegal overissue of stock. It clearly seems to us that, if the facts be as alleged, then the parties have, by their acts, effectually canceled and rescinded their original contract. *Perkins v. Union B. H. & E. Machine Co.* 12 Allen, 273.

Different questions might arise were the controversy one between creditors of the corporation and subscribers to stock, but in an action between the corporation itself and the subscribers the foregoing conclusion seems very clear.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.

A motion for a rehearing was denied February 2, 1897.

THE WISCONSIN MARINE & FIRE INSURANCE COMPANY BANK, Appellant, vs. WILKIN and others, Respondents.

*November 30, 1896 — February 2, 1897.*

*Guaranty, construction of: Joint liability.*

| | |
|---|---|
| 95 | 111 |
| 100 | 572 |
| s100 | 603 |
| 101 | 558 |

| | |
|---|---|
| 95 | 111 |
| e113 | 138 |

| | |
|---|---|
| 95 | 111 |
| 116 | 101 |

Certain persons, all but two of them being stockholders in the W. Mfg. Co., signed an instrument which, after reciting that the W. Mfg. Co. was indebted to the W. M. & F. I. Co. Bank in a certain sum, and might thereafter become indebted in additional amounts,

and expressing a consideration, proceeded as follows: "We and each of us do hereby agree upon demand to pay to said . . . bank all loans, drafts, overdrafts, indorsements, accounts, checks, notes, interest, demands, and liabilities, of every kind and description, now owing, or which may hereafter become due or owing, by said W. Mfg. Co. to said . . . bank. It is understood that we each waive notice. . . . This is a continuing guaranty. It is understood that we are to pay any sums which may accrue hereunder in the proportion which the amount of stock now held by each of us in said company bears to the whole amount of capital paid in by said company." In an action on such guaranty, *held*, that whatever might have been the intention of the signers, they had all of them in legal effect bound themselves jointly and severally to the bank for the entire indebtedness of the W. Mfg. Co., and not simply in severalty for an amount proportioned to the stock held by them; and that the latter clause could only have effect as fixing a rule of contribution among themselves.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

This is an action on a contract of guaranty, which is in the following words:

"WHEREAS, the Wilkin Manufacturing Company, of Milwaukee, is indebted to the *Wisconsin Marine & Fire Insurance Company Bank*, of Milwaukee, Wisconsin, in the sum of about $9,000 (nine thousand dollars);

"AND WHEREAS, the said company may hereafter become indebted to said bank for additional amounts;

"Now, THEREFORE, in consideration of the premises, and of one dollar to each of us in hand paid, the receipt whereof is hereby acknowledged, we and each of us do hereby agree upon demand to pay, or cause to be paid, to said *Wisconsin Marine & Fire Insurance Company Bank*, all loans, drafts, overdrafts, indorsements, accounts, checks, notes, interest, demands, and liabilities, of every kind and description, now owing, or which may hereafter become due or owing, by said Wilkin Manufacturing Company to said *Wisconsin Marine & Fire Insurance Company Bank*.

"It is understood that we each waive notice of demand and notice and protest of every kind, and agree that said bank may without notice grant extensions of time to said company, and may from time to time renew any obligations of said company. This is a continuing guaranty.

"It is understood that we are to pay any sums which may accrue hereunder in the proportion which the amount of stock now held by each of us in said company bears in the whole amount of capital paid in by said company.

"IN WITNESS WHEREOF, we have hereunto set our hands and seals, this ninth day of Jany., A. D. 1888."

The instrument was signed by all the defendants.

· The answer of the defendants sets forth the amount of paid-up stock of each defendant in the Wilkin Manufacturing Company, and the total amount of paid-up stock of the company at the date of the execution of the contract. The defendants claimed that their liability to plaintiff was in the proportion which the amount of stock held by each, at the date of the contract, bore to the whole amount of capital paid in at that time. The trial court construed the contract in accordance with such contention, and found that defendants *Morris* and *Wilkin* were not the owners of stock at all; hence not liable on the contract.

The case was tried by the court. Appropriate exceptions were filed to raise the questions considered in the opinion. Judgment was rendered in accordance with the findings, against each defendant, for such proportion of the indebtedness of the Wilkin Manufacturing Company to the plaintiff as the amount of stock of such defendant in such company bore to the whole amount of its paid-up stock at the date of the contract. Plaintiff appealed from the judgment.

For the appellant there was a brief by *Miller, Noyes, Miller & Wahl*, attorneys, with *Fish & Cary*, of counsel, and oral argument by *John T. Fish* and *Geo. H. Noyes*.

For the respondents there were briefs by *Stark & Han-*

*son* and *Winkler*, *Flanders*, *Smith*, *Bottum & Vilas*, and oral argument by *F. C. Winkler* and *Joshua Stark*. They contended that the guaranty was several and not joint, and that the instrument itself showed that to be the intention of the parties. *Farmers' L. & T. Co. v. Commercial Bank*, 15 Wis. 424; *Railroad Co. v. Railway Co.* 44 Ohio St. 287; *Higginson v. Weld*, 14 Gray, 165. In order to arrive at the meaning of a contract the court may look to the surrounding circumstances. *Nash v. Towne*, 5 Wall. 689; *U. S. v. Peck*, 102 U. S. 64; *Manchester P. Co. v. Moore*, 104 N. Y. 680; *Sigerson v. Cushing*, 14 Wis. 527; *Bedard v. Bonville*, 57 id. 270; *Meade v. Gilfoil*, 64 id. 18; *Beason v. Kurz*, 66 id. 448; *Stout v. Weaver*, 72 id. 148; *Lynch v. Henry*, 75 id. 631; *Lyman v. Babcock*, 40 id. 503. The whole contract should be considered. *Hosmer v. McDonald*, 80 Wis. 54; *Janesville Cotton Mills v. Ford*, 82 id. 416, 430; *Davis v. Belford*, 70 Mich. 121; *Gibbons v. Bente*, 51 Minn. 499.

The following opinion was filed December 15, 1896:

MARSHALL, J. This case turns on the construction of the contract of guaranty. The learned trial judge held that, by the terms of the contract, there was created a several, not a joint, liability; that each of the defendants who signed as guarantor became liable only for such portion of the indebtedness of the Wilkin Manufacturing Company as the amount of stock held by him in such company, at the date of the contract, bore to the whole amount of capital then paid in to said company. It is claimed on the part of plaintiff that the contract is a joint and several obligation; that each of the signers is liable to the plaintiff for the whole indebtedness of their principal; and that the last clause of the agreement, which the defendants contend limits the liability of each of the guarantors to the proportion of the debts of the manufacturing company which such guarantor's stock, at the date of the contract, bore to the total paid-up stock of the

corporation, has no other effect than to furnish a rule for contribution between the several guarantors. . Considerable evidence was received, under objection, respecting the transactions leading up to the signing of the contract, and numerous errors are assigned on the rulings of the court in that regard; but the view we take of the case renders it unnecessary to consider such alleged errors.

The rules that govern the judicial construction of contracts, rightly understood and properly applied, will leave no reasonable doubt respecting the legal effect of the one in question. It must be borne in mind that the office of judicial construction is not to make contracts or to reform them, but to determine what the parties contracted to do; not necessarily what they intended to agree to, but what, in a legal sense, they did agree to, as evidenced by the language they saw fit to use. If the meaning of the language is ambiguous, the construction may be aided by resort to proof of the situation of the parties, their acts, and of the subject matter. *Nilson v. Morse*, 52 Wis. 240; *Sigerson v. Cushing*, 14 Wis. 527. It is said that the intention of the parties is to be sought for in the instrument itself, and that particular words and sentences must be construed so as to subserve such intention (*Weiseger v. Wheeler*, 14 Wis. 101; *Johnson v. N. W. Nat. Ins. Co.* 39 Wis. 87); but that must be taken in connection with the proviso that no intention, however manifest, can be effectuated unless it is consistent with a meaning that may reasonably be attributed to the language of the contract. So, after all, judicial construction comes down to this: What did the parties mean by the language they used? *Weiseger v. Wheeler, supra; Johnson v. N. W. Nat. Ins. Co. supra; T. B. Scott L. Co. v. Hafner-Lothman Mfg. Co.* 91 Wis. 667; *Jacobs v. Spalding*, 71 Wis. 177; *Braun v. Wis. Rendering Co.* 92 Wis. 245; *Gibbons v. Grinsel*, 79 Wis. 365. Nevertheless, while what the parties themselves meant is a test, it is not the only test of what a con-

tract is in legal effect, for there is a limit, as indicated, beyond which the courts cannot go in that regard, expressed by standard text writers, and substantially all judicial authority, in the language of Parsons on Contracts (volume 2, p. 494), as follows: " Courts cannot adopt a construction of any legal instrument which shall do violence to the rules of language or the rules of law." *Parkhurst v. Smith*, Willes, 332. "If we go beyond this," says Chief Baron EYRE, in *Gibson v. Minet*, 1 H. Bl. 569, "we no longer construe men's deeds, but we make deeds for them." In short, that meaning cannot be given to a contract which cannot be reasonably drawn from its language, for the purpose of carrying out the intention of the parties thereto, however clearly established. It follows from the foregoing that, if a contract is so worded that it cannot be construed so as to carry out fully the intention of the parties, a court of law is powerless to do more than to enforce it so far as possible, within the principles indicated. Stating the rule in the language of Parsons on Contracts (volume 2, p. 494): " The rules of judicial construction do not require that the court should always construe a contract to mean what the parties meant, but that it should give to the contract such construction as will bring it as near the actual meaning of the parties, as the words they saw fit to employ, when properly construed, and the rules of law, will permit." There is another familiar rule that should be observed in the construction of this contract. That is that effect should be given, if possible, to all its parts. To that end, no part of the agreement should be rejected as void for uncertainty, or otherwise, if it will admit of any reasonable construction so as to sustain it as an essential part of the contract.

It is only left in this case to apply the foregoing principles. The first clause of the agreement contains the following: "We and each of us do hereby agree upon demand to pay, or cause to be paid, to said *Wisconsin Marine & Fire*

*Insurance Company Bank, all loans . . . and liabilities, of every kind and description,* now owing, or which may hereafter become due or owing, by said Wilkin Manufacturing Company to said *Wisconsin Marine & Fire Insurance Company Bank.*" It cannot be, and is not, contended but that this language, by itself, constitutes a plain joint and several obligation. The rules for judicial construction cannot be properly resorted to, to vary or explain such language so as to mean anything else, for the words are not susceptible of any other meaning. The learned trial court, in effect, destroyed this plain agreement, by holding that it was controlled or modified by the last clause, providing that the signers should pay in the proportion which their several holdings of stock bore to the total paid-up stock of the company at the date of the contract. That, clearly, violated the rule that effect should be given, if possible, to every part of the contract, as it let out *Wilkin* and *Morris* entirely, they not being stockholders at the time of the execution of the agreement, notwithstanding they severally agreed to *pay all* the liabilities of their principal. It violated the rule that effect cannot be given to the intention of the parties which violates the rules of language. It destroyed the effect of the plain, absolute agreement for joint and several liability of the signers for *all the indebtedness,* made in the first part of the agreement. Looking to the steps which led up to the making of the contract, the court came to the conclusion that the parties intended to incur a several liability proportionate to their respective holdings of stock, as compared with the whole paid-up stock of the principal, and gave effect to that intention, by violating the rule that courts can only go to the extent of giving effect to the intention, so far as to bring the contract as near thereto as the language contained therein, when properly construed, and the rules of law will permit. Lastly, the court overlooked the rule that, when two clauses of a contract are in

The Wisconsin Marine & Fire Ins. Co. Bank vs. Wilkin and others.

conflict, the first governs, rather than the last. *Green Bay & M. C. Co. v. Hewitt*, 55 Wis. 96; 2 Pars. Cont. 513; *Hartung v. Witte*, 59 Wis. 285, cited by appellant's counsel. This is based on a very long and well-established rule stated by Blackstone (in book 2, Comm. 381), thus: "If there be two clauses so totally repugnant that they cannot stand together, the first will be received, and the last rejected." To the same effect are Chitty, Cont. (11th Am. ed.), 128, and *Straus v. Wanamaker*, 175 Pa. St. 213. In the last citation, the contract contained a distinct guaranty of fifty per cent. profit on a transaction between the parties, followed by a clause the literal effect of which was to limit or partially destroy such guaranty. The court said: "The obvious method of construing such a contract is to hold that the parties clearly stated their purpose in the beginning."

The law is so well settled on the subject that it cannot be contended but that, if the last clause of the contract is so repugnant to the first that both cannot stand, the first must be taken as expressing the contract between the parties. But it is contended that a proviso merely limiting a previous clause of a contract, without destroying it, is not void, but must be considered as incorporated into and forming a part of the clause which it limits. On this, *Williams v. Hathaway*, 6 Ch. Div. 544, is cited, and to that may be added *Chase v. Bradley*, 26 Me. 538; *Jackson v. Ireland*, 3 Wend. 99; *Butterfield v. Cooper*, 6 Cow. 481. Indeed, that is elementary. Whart. Cont. § 673; 1 Addison, Cont. * 186; Story, Cont. § 810. "But," says Judge Story, "if the subsequent stipulation of the contract should restrict what was distinctly stated and constitutes a principal inducement to the contract, it will be of no effect." That is really what is decided in *Williams v. Hathaway, supra.* "The distinction," says JESSEL, M. R., "has always been taken between a proviso which is repugnant to the covenant and therefore void, and a proviso which can be incorporated into the cove-

nant and be consistent with it." He limits the rule that a proviso limiting a previous covenant may stand as an essential part of the contract, to such as may reasonably be considered as incorporated into and forming a part of the covenant, hence not repugnant to it. That is in perfect accord with the rule laid down by Judge Story, to the effect that "if the subsequent clause contradicts what was distinctly stated, and constitutes a principal part of the contract, it has no effect upon it." It is also in accord with the holdings of this court on the subject in *Green Bay & M. C. Co. v. Hewett,* 55 Wis. 96; *Hartung v. Witte,* 59 Wis. 289. Testing the contract in question by the rule last discussed, it is clearly apparent that the last clause cannot affect the obligation which precedes it. The words whereby each of the signers agreed to "*pay all of the liabilities*" of their principal are distinct and unmistakable. The effect which defendants claim for the last clause, and which the court gave to it, contradicts, restricts, and destroys the first provision entirely as to two of the signers; and it also entirely destroys such clause so far as it creates a joint and several liability for the whole indebtedness of the principal. That is not permissible according to any authority to which our attention has been called, or any which we have been able to discover.

As bearing on the question under discussion, counsel for defendants confidently cite *Gibbons v. Grinsel,* 79 Wis. 365, and other cases in this and other courts, involving the construction of subscription contracts for the payment of the cost of constructing creameries, each subscriber to have an interest in the property corresponding to the amount of his subscription. Those cases are plainly distinguishable from this. In *Gibbons v. Grinsel,* which is a fair type of all of them, the subscribers agreed to pay $6,000. It was provided that a corporation might be formed, and each take stock to the amount of his subscription, which should be the limit of

his liability. Each "pledged himself to the performance of his part of the agreement." At the foot of the contract, each subscribed his name, placing the amount of his subscription opposite thereto. The court held that each subscriber only bound himself to pay the amount of his subscription, and that all in the aggregate bound themselves to pay the full amount of $6,000; that such was the manifest intention of the parties; and that it was consistent with the language used. By this construction, the agreement of all to pay $6,000 was merely explained, but not impaired, by the subsequent provisions. If the contracts in the creamery cases provided that the subscribers, and each of them, would *pay the full sum of $6,000*, obviously a very different question would have been presented, and a very different conclusion respecting the character of the contract might have been reached.

It follows from the foregoing that, whatever was the intention of the parties as shown by their acts preceding the signing of the contract, none other can be given effect to under the contract than that they jointly and severally bound themselves to the plaintiff for the entire indebtedness of the Wilkin Manufacturing Company to plaintiff, mentioned in the complaint. The language of the contract does not admit of any other reasonable construction without violating both the rules of language and of law. The foregoing does not necessarily require the rejection of any part of the contract. The effect of our reasoning is that the first paragraph of the agreement proper contains a joint and several agreement to pay the whole indebtedness of the Wilkin Manufacturing Company to the plaintiff, and that it must stand as expressing the agreement between plaintiff and defendants. The last clause, if intended to refer to the obligation which precedes it, so restricts and destroys it that it cannot be enforced as against the plaintiff, whatever the actual intention of the parties was. Such last clause, however, may be given the

full effect that can be legitimately attributed to it as fixing-
a rule of contribution between the defendants. That will
give to the agreement a construction as near the actual
meaning of the parties as the language they used to express
their intention, when properly construed, and the rules of
law, will permit. The court cannot go further.

*By the Court.*— Judgment of the circuit court is reversed,.
and the cause remanded with directions to render judgment.
in accordance with this opinion.

A motion by the respondents for a modification of the-
mandate of this court, or for a rehearing, was denied, with
costs, February 2, 1897, except that the mandate was modi-
fied so as to read as follows:

The judgment of the circuit court is reversed, and the
cause is remanded with directions to enter judgment in
accordance with this opinion, unless the trial court, upon no-
tice and application, in its discretion and upon such reason-
able terms as may be just and equitable, grants leave to the
respondents *Mann* and *Munkwitz* to so amend their answers
as to raise and present the issue of reformation of the con-
tract on which the action is based.