# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP1319 |

| | |
|---|---|
| COMPLETE TITLE: | Milwaukee Police Supervisors Organization, John Cwiklinski, Cheryl Ferrill, Kimberlee Foster, Dale Grudzina, April Hoffman, Joel Kujawa, Christopher Lehner, William McKeown, Jason Mucha, Brenda Nogalski, Tony Snow, Albert Carl Sunn, Jr., William Welter, Mark Zaremba and Joe Farina, <br>         Plaintiffs-Respondents, <br> Milwaukee Professional Firefighters' Association Local 215, <br>         Intervenor-Respondent-Petitioner, <br>     v. <br> City of Milwaukee and Milwaukee Employees' Retirement System, <br>         Defendants-Appellants. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 399 Wis. 2d 840, 967 N.W.2d 306
(2021 – unpublished)

| | |
|---|---|
| OPINION FILED: | March 21, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 12, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Milwaukee |
|   JUDGE: | Jeffrey A. Conen |

JUSTICES:
REBECCA GRASSL BRADLEY, J., delivered the majority opinion for a unanimous Court.
NOT PARTICIPATING:

ATTORNEYS:

For the intervenor-respondent-petitioner, there were briefs filed by *Christopher J. MacGillis, Sean E. Lees,* and *MacGillis Wiemer, LLC.* There was an oral argument by *Christopher J. MacGillis* and *Sean E. Lees.*

For the defendants-appellants, there was a brief filed by *Patrick J. McClain*, assistant city attorney. There an oral argument by *Patrick J. McClain*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2019AP1319
(L.C. Nos. 2018CV1274 & 2018CV6612)

STATE OF WISCONSIN    :    IN SUPREME COURT

**Milwaukee Police Supervisors Organization, John Cwiklinski, Cheryl Ferrill, Kimberlee Foster, Dale Grudzina, April Hoffman, Joel Kujawa, Christopher Lehner, William McKeown, Jason Mucha, Brenda Nogalski, Tony Snow, Albert Carl Sunn, Jr., William Welter, Mark Zaremba and Joe Farina,**

        **Plaintiffs-Respondents,**

**Milwaukee Professional Firefighters' Association Local 215,**

        **Intervenor-Respondent-Petitioner,**

    **v.**

**City of Milwaukee and Milwaukee Employees' Retirement System,**

        **Defendants-Appellants.**

**FILED**

**MAR 21, 2023**

Sheila T. Reiff
Clerk of Supreme Court

REBECCA GRASSL BRADLEY, J., delivered the majority opinion for a unanimous Court.

REVIEW of a decision of the Court of Appeals. *Reversed*

¶1 REBECCA GRASSL BRADLEY, J. The Milwaukee City Charter entitles firefighters injured on the job to duty disability retirement (DDR) benefits, which provide monthly wage

replacement payments to firefighters unable to continue active service. As with all pension benefits provided to City of Milwaukee employees, the City of Milwaukee Employees' Retirement System (MERS) administers DDR benefits. Under the Milwaukee City Charter, MERS must pay an eligible DDR beneficiary a percentage of the "current annual salary for such position which he held at the time of such injury." MCC § 36-05-C-1-a. "Current annual salary" is undefined in the Charter, and its meaning is the subject of this dispute.

¶2 Under the 2013-2016 collective bargaining agreement between Milwaukee Professional Firefighters' Association Local 215 and the City of Milwaukee (CBA[1]), certain Milwaukee firefighters are entitled to a 5.8% "pension offset payment" conditioned on an employee-paid pension contribution equal to 7% of salary. Currently, all active Local 215 members make this contribution, but DDR beneficiaries do not. Prior to 2017, MERS included the pension offset payment in the "current annual salary" for purposes of calculating the amount of DDR benefits. In 2017, however, MERS excluded the pension offset payment from the calculation of DDR benefits.

¶3 The Milwaukee Police Supervisors Organization (MPSO) and Milwaukee Professional Firefighters' Association Local 215 (Local 215) challenged MERS's shift in policy. The circuit

---

[1] All subsequent references to the CBA are to the 2013–2016 version.

court[2] granted summary judgment in favor of MPSO and Local 215. The court of appeals reversed the circuit court's grant of summary judgment to Local 215 but affirmed with respect to MPSO, extinguishing MPSO's involvement in this appeal. Milwaukee Police Supervisors Org. v. City of Milwaukee, No. 2019AP1319, unpublished slip op., ¶24 (Wis. Ct. App. Oct. 5, 2021) (per curiam).

¶4   Before this court, Local 215 argues the pension offset payment must be included in the calculation of DDR benefits for beneficiaries hired before October 3, 2011. We agree, and therefore reverse the court of appeals. Under the CBA, the current annual salary includes the 5.8% pension offset payment; therefore, the plain language of the Charter requires MERS to include the pension offset payment in the calculation of DDR benefits.

## I. Background

¶5   Chapter 36 of the Milwaukee City Charter, titled the Employes' Retirement System Act (ERSA), establishes DDR benefits for any firefighter whose duty-related injuries cause disability. MCC § 36-05-3-c-1-a.[3]   The Charter entitles a

---

[2] The Honorable Jeffrey A. Conen, Milwaukee County Circuit Court, presided.

[3] MCC § 36-05-3-c-1-a provides, in relevant part:

(continued)

3

qualifying firefighter each year to "75% of the current annual salary for such position which he held at the time of such injury."  Id.  A firefighter who sustains a career-ending disability "that would impair the member's (retiree's) ability to earn a livelihood" shall receive "90% of his current annual salary" in DDR benefits each year.  § 36-05-3-c-1-b.[4]  Although the Charter does not define the phrase "current annual salary," the parties agree the phrase garners meaning from the CBA.

¶6  The process by which Local 215 members contribute toward their pensions is established primarily in Articles 23 and 10 of the CBA.  Article 23 requires each firefighter who is a MERS member to contribute 7% of his "earnable compensation."

---

[A]ny fireman or policeman who shall become disabled as the direct result of injury incurred in the performance of one or more specific acts of duty shall have a right to receive duty disability benefit during the period of such disability of an amount equal to 75% of the current annual salary for such position which he held at the time of such injury.

[4] MCC § 36-05-3-c-1-b provides, in relevant part:

In the event however that such fireman or policeman who is eligible to recover duty disability has a disability involving the loss of both eyes or the full loss of use of one eye and one limb or the full loss of the use of 2 limbs or an equivalent disability that would impair the member's (retiree's) ability to earn a livelihood and such disability is determined by majority action of the medical panel or medical council, then in such event the disabled fireman or policeman shall receive a duty disability pension of 90% of his current annual salary. . . .

4

To compensate for this cost to the firefighter, Article 10 of the CBA establishes "pension offset payments" in the amount of 5.8% of the biweekly wage, thereby increasing employees' taxable compensation. Article 10 entitles only those employees who make the member contribution to receive a pension offset payment.[5] The parties agree DDR recipients cannot make the 7% contribution, but they disagree whether the 5.8% pension offset payment must be included as part of the "current annual salary" used to calculate DDR benefits under ERSA.

¶7     Article 10 of the CBA also contains two sets of salary grids detailing the biweekly wages of Local 215 members. One set of grids (Section 10(C)) lists the wages for employees hired before October 3, 2011. Another set of grids (Section 10(B)) lists the wages for those hired on or after October 3, 2011. Within each set, individual grids are labeled with the titles of the positions they cover—firefighter, fire captain, fire

---

[5] Article 10 of the CBA provides, in pertinent part:

> Commencing Pay Period 1, 2016, employees hired prior to October 3, 2011 who make the member contribution in accordance with the provisions of Article 23 of this Agreement shall receive an additional 2.9% pension offset payment. The pension offset payment to the employee will continue to be made as long as the employee makes the member contribution. If the employee does not make the member contribution, the 5.8% pension offset (2015 offset and 2016 offset) payment will no longer be paid to the employee. The pension offset payment made to such eligible employee shall be base building and pensionable.

lieutenant, etc. Each grid includes a wage ladder, the numbered steps of which correspond with the number of years worked in a particular position. To illustrate, the grid below applies to firefighters and fire paramedics hired before October 3, 2011:

a. Firefighter
Fire Paramedic

Step 1. $1,683.57
Step 2. 1,751.05
Step 3. 1,940.59
Step 4. 2,130.65
Step 5. 2,340.21
Step 6. 2,571.33
Step 7. 2,801.98

A first-year firefighter earned $1,683.57 biweekly. In his second year, his biweekly compensation increased to $1,751.05.

¶8 Prior to 2017, MERS used the pre-October 3, 2011 grids to calculate DDR benefits for recipients hired before that date. The pre-October 3, 2011 grids include the 5.8% pension offset payment without reduction for the requisite 7% pension contribution by the employee. The 7% contribution is typically withheld as a payroll deduction from an employee's base wages. The figures in the pre-October 3, 2011 grids are therefore higher than a Local 215 member's biweekly take home pay.

¶9 In 2017, MERS changed how it calculated DDR benefits. Prior to implementing that change, MERS asked the Milwaukee City Attorney's Office "whether the 5.8% 'pension offset payment' for represented public safety employees is includable in 'current annual salary' for purposes of MCC 36-05-3-c-1-a." In a memorandum, the Assistant City Attorney opined that "the 5.8%

6

pension offset payment is not includable in 'current annual salary' as that phrase is used in Chapter 36 of the City Charter." MERS accordingly notified DDR beneficiaries it would no longer include the pension offset payment in the calculation of their DDR benefits. Thereafter, MERS used the post-October 3, 2011 grids to calculate DDR benefits in lieu of the pre-October 3, 2011 grids. Because the post-October 3, 2011 set excludes the 5.8% pension offset payment, the amount of DDR benefits decreased. MERS also clawed back excess benefits from each DDR benefit recipient on the pre-October 3, 2011 roll, directing some DDR beneficiaries to return pension payments of up to $6,000 per beneficiary.

¶10 In response, MPSO sought a declaratory judgment and injunctive relief against the City and MERS. Local 215 intervened, and the cases were consolidated. MPSO and Local 215 both moved for summary judgment, arguing the 5.8% pension offset payment must be included in the DDR benefits calculation. In turn, MERS and the City also moved for summary judgment, arguing the pension offset payment cannot be included. After a hearing, the circuit court granted summary judgment in favor of MPSO and Local 215, concluding the pension offset payment must be included in calculating DDR benefits because the CBA provides such payments are "base building and pensionable."

¶11 The Court of Appeals reversed, reasoning the CBA conditions receipt of the 5.8% pension offset payment on the 7% member contribution. Milwaukee Police Supervisors Org., No. 2019AP1319, at ¶19. Because DDR recipients do not make that

7

contribution, the court concluded DDR recipients cannot receive the pension offset payment. Id., ¶20. According to the court of appeals, "current annual salary" equals whatever an employee would earn had he never made the 7% contribution or received the 5.8% pension offset payment. Id. Local 215[6] filed a petition for review, which we granted.

## II. Standard of Review

¶12 This case requires us to review a grant of summary judgment. "Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." Brey v. State Farm Mut. Auto. Ins. Co., 2022 WI 7, ¶8, 400 Wis. 2d 417, 970 N.W.2d 1 (quoting Kemper Indep. Ins. Co. v. Islami, 2021 WI 53, ¶13, 397 Wis. 2d 394, 959 N.W.2d 912); Wis. Stat. § 802.08(2) (2021–22) ("The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). Because the parties in this case have stipulated to the facts, we need only interpret ordinances and a contract to

---

[6] The court concluded MPSO's collective bargaining agreement did not condition pension offset payments on member contributions. Milwaukee Police Supervisors Org. v. City of Milwaukee, No. 2019AP1319, unpublished slip op., ¶1 (Wis. Ct. App. Oct. 5, 2021) (per curiam). As a result, the court held the "current annual salary" for MPSO members includes the pension offset payment. Id.

resolve this dispute. See Lewis v. Physicians Ins. Co. of Wis., 2001 WI 60, ¶9, 243 Wis.2d 648, 627 N.W.2d 484 ("This case is before us on a grant of summary judgment. Because the parties have stipulated to the facts, this appeal only raises a question of law") (citing L.L.N. v. Clauder, 209 Wis. 2d 674, 682, 563 N.W.2d 434 (1997)).

¶13 To determine whether the circuit court properly granted summary judgment to Local 215, we must interpret the Milwaukee City Charter. The interpretation of city ordinances is a question of law we review independently. Milwaukee Dist. Council 48 v. Milwaukee Cnty., 2019 WI 24, ¶11, 385 Wis. 2d 748, 924 N.W.2d 153 (citing Schwegel v. Milwaukee Cty., 2015 WI 12, ¶18, 360 Wis. 2d 654, 859 N.W.2d 78). "In interpreting municipal ordinances, we apply the same principles used in statutory interpretation." Id. (citing Stoker v. Milwaukee Cty., 2014 WI 130, ¶17, 359 Wis. 2d 347, 857 N.W.2d 110).

¶14 "[S]tatutory interpretation 'begins with the language of the statute.'" Id. (quoting State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110). "We give statutory language 'its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning.'" Id. We search for plain and reasonable meaning, not ambiguity. Id., ¶47. If statutory language is unambiguous, we do not "consult extrinsic sources of interpretation[.]" Id., ¶46.

9

¶15 This case also requires us to interpret the CBA. Like any other contract, the interpretation of a collective bargaining agreement presents a question of law we review independently. Roth v. City of Glendale, 2000 WI 100, ¶15, 237 Wis. 2d 173, 614 N.W.2d 467 ("Interpretation of a collective bargaining agreement, as with other contracts, presents a question of law that we review independently of the determinations rendered by the circuit court and the court of appeals") (citing Wis. Label Corp. v. Northbrook Prop. & Cas. Ins. Co., 2000 WI 26, ¶22, 233 Wis. 2d 314, 607 N.W.2d 276).

¶16 In interpreting contracts, courts must ascertain the intent of the contracting parties as reflected in the contract language. See Am. Fam. Mut. Ins. Co. v. Am. Girl, Inc., 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65 ("Judicial interpretation of a contract . . . seeks to determine and give effect to the intent of the contracting parties."). We discern the intent of contracting parties from the plain and ordinary meaning of the text. Tufail v. Midwest Hosp., LLC, 2013 WI 62, ¶26, 348 Wis. 2d 631, 833 N.W.2d 586 ("We presume the parties' intent is evidenced by the words they chose, if those words are unambiguous") (internal quotation marks omitted) (quoting Kernz v. J.L. French Corp., 2003 WI App 140, ¶9, 266 Wis.2d 124, 667 N.W.2d 751).

### III. Discussion

¶17 The Milwaukee City Charter grants duty disability payments to firefighters who sustain injuries in the line of

duty.   Section 36-05-3-c-1-a of the Charter provides, in relevant part:

> [A]ny fireman . . . who shall become disabled as the direct result of injury incurred in the performance of one or more specific acts of duty shall have a right to receive duty disability benefit during the period of such disability of an amount equal to 75% of the current annual salary for such position which he held at the time of such injury.

¶18   The Charter does not define the phrase "current annual salary," but the parties agree the CBA is the source of its meaning.   Because the CBA describes the pension offset payment as "base-building and pensionable," Local 215 argues the phrase "current annual salary" encompasses that payment.   The City and MERS disagree, contending the pension offset payment may not be included in "current annual salary" for purposes of calculating DDR benefits because DDR beneficiaries do not make the requisite 7% contribution.   Both parties supplement their arguments with extrinsic evidence to resolve any ambiguity.   Resort to extrinsic evidence is unnecessary because the phrase "current annual salary" is unambiguous and its meaning is discernible from the pre-October 3, 2011 salary grids in the CBA.

¶19   The salary grids detail the biweekly wages for each position.   These figures reflect the "current annual salary" for employees hired before October 3, 2011.   The grids, located in an article titled "Base Salary," list the biweekly wages employees in each position received.   The parties agree "current annual salary," as used in the Charter, means a position's base salary.   Most naturally construed, the figures in the grids—

11

multiplied by 26——constitute the base salary for each position within the Milwaukee Fire Department. Because the "base salary" for each position in those salary grids includes the 5.8% pension offset payment, and the parties agree the "base salary" means the "current annual salary," MERS must include the pension offset payment in the calculation of DDR benefits, which are calculated as a percentage of the "current annual salary for each position" under Section 36-05-3-c-1-a of the Charter.

¶20 Local 215 argues the pension offset payment must be included in base salary because the CBA describes the payments as "base-building and pensionable." Although this description is unnecessary for purposes of discerning the meaning of "current annual salary" under the CBA, the pension offset payment does increase the base salary for each position, thereby increasing the amount of the DDR benefit payable under the Charter. Logically, the pension offset payment "builds" the base salary for both active duty employees as well as DDR beneficiaries who are paid a percentage of the base salary for the position they held while on active duty. As the City explains, however, DDR benefits represent wage replacements for duty-disabled firefighters and are not a pension. When DDR beneficiaries reach retirement age, their eligibility for DDR benefits ceases and their pension benefits become payable. Even without the "base-building and pensionable" language in the CBA, the "current annual salary" for each position encompasses the 5.8% pension offset payment. The salary grids detailing the current annual salary for each position therefore obligate MERS

to include the pension offset payment in its calculation of DDR benefits.

¶21  The City and MERS contend a provision in Article 10, Section (C) of the CBA conditions a member's eligibility for the pension offset payment on the member making the 7% contribution.[7] Based on that provision, they argue the benefits paid to DDR recipients, who do not make the 7% contribution, cannot include the pension offset payment.  We disagree.  That provision applies to active duty employees, not DDR beneficiaries.  Under the CBA, "employees" means only those who are "in active service."  Their duty-related disabilities prevent DDR beneficiaries from being in active service.  Because DDR beneficiaries are not "employees," they are not required to make the 7% member contribution.  Nevertheless, because the "current annual salary" for the positions they held while in active service includes the pension offset payment, DDR benefits——which

_____

[7] That provision of Article 10, Section (C) provides:

> Commencing Pay Period 1, 2016, employees hired prior to October 3, 2011 who make the member contribution in accordance with the provisions of Article 23 of this Agreement shall receive an additional 2.9% pension offset payment.  The pension offset payment to the employee will continue to be made as long as the employee makes the member contribution.  If the employee does not make the member contribution, the 5.8% pension offset (2015 offset and 2016 offset) payment will no longer be paid to the employee.  The pension offset payment made to such eligible employee shall be base building and pensionable.

are calculated based on a percentage of the "current annual salary"——necessarily include the pension offset payment.

¶22 The provision of Article 10, Section (C) conditioning a member's eligibility for the pension offset payment on the member making the 7% contribution has no bearing on the meaning of "current annual salary" as used in MCC § 36-05-3-c-1-a. It merely disqualifies active duty employees who do not make the member contribution from receiving pension offset payments. That DDR beneficiaries do not currently make the contribution is irrelevant. The Charter entitles disabled firefighters to a disability benefit based on the "current annual salary" for the position they held at the time of their eligibility for DDR benefits——without conditions or exceptions. The fact that DDR beneficiaries neither receive the 5.8% pension offset payment nor make the 7% pension contribution is immaterial because the current annual salary for the position held at the time of disability includes the 5.8% payment.

¶23 In accepting the City and MERS's interpretation, the court of appeals erred. The court reasoned "the Local 215 contract clearly requires a member to make the 7% pension contribution to receive the 5.8% wage increase but "pursuant to ordinance . . . DDR beneficiaries may not contribute to the pension plan. Therefore, DDR beneficiaries are not entitled to receive the pension offset wage increase to their base salary." Milwaukee Police Supervisors Org., No. 2019AP1319, at ¶20. The court of appeals erroneously conflated DDR beneficiaries with active duty employees. Unlike the latter, DDR beneficiaries

14

receive a disability benefit, not a base salary.  CBA provisions expressly applicable to employees who are MERS members simply do not extend to DDR beneficiaries.

¶24 In adopting the construction of the governing ordinance and the CBA advanced by the City and MERS, the court of appeals missed the pivotal fact that DDR beneficiaries do not receive the 5.8% as a "pension offset payment" per se, but instead because the "current annual salary" for members hired before October 3, 2011 includes it.  Presenting an equity-based argument, the City and MERS emphasize the fact that "firemen who receive the 5.8% increase also have to forgo 7% of their base salary as a member contribution," which DDR beneficiaries do not make.  We do not balance equities in interpreting either ordinances or contracts——we apply their plain meaning.  See Anderson v. Wilson, 289 U.S. 20, 27 (1933) ("We do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason.  We take the statute as we find it"); Wisconsin Marine & Fire Ins. Co. Bank v. Wilkin, 95 Wis. 111, 115, 69 N.W. 354 (1896) ("It must be borne in mind that the office of judicial construction is not to make contracts or to reform them, but to determine what the parties contracted to do; not necessarily what they intended to agree to, but what, in a legal sense, they did agree to, as evidenced by the language they saw fit to use.").

¶25 Finally, the City and MERS contend "exempting" DDR beneficiaries from the pension offset language conditioning receipt of the 5.8% increase on making the 7% pension

15

contribution renders that condition applicable to no one, since all active-duty firefighters hired before October 3, 2011 pay the mandatory 7% member contribution. The extrinsic fact that the CBA may have created "a category into which no employee fits" does not alter the interpretation or application of the contract's clear text. See Milwaukee Dist. Council 48, 385 Wis. 2d 748, ¶18. This language of the CBA still "bears a textual function," providing that an active duty employee who ceases to make the contribution will no longer receive the pension offset payment. Id. "Any apprehension about the existence of a category into which no employee may fit necessarily concerns the wisdom" of the language negotiated by the City and Local 215. Id. Second-guessing the prudence of that language because all employees currently make the contribution "would reach beyond the proper judicial role, which is limited to interpreting and applying the clear text." Id. Regardless, the CBA requires the City and MERS to pay each DDR beneficiary the "current annual salary" for the position he held during active service, and for anyone hired before October 3, 2011 that salary includes the 5.8% pension offset payment.

¶26 In addition to their textual arguments, each party offers extrinsic evidence to support its analysis. We consider extrinsic evidence only when contractual or statutory language is ambiguous. Kalal, 271 Wis. Stat. § 633, ¶46. In this case, the relevant text of the CBA and the Charter is unambiguous, obviating any need for resorting to extrinsic evidence. Our analysis begins and ends with the governing text.

IV.   Conclusion

¶27  We conclude the circuit court properly granted Local 215's motion for summary judgment.  The Charter, read alongside the CBA, requires MERS to include the 5.8% pension offset payment in the "current annual salary" used to calculate DDR benefits for beneficiaries hired before October 3, 2011.

*By the Court.*—The decision of the court of appeals is reversed.