Hartung vs. Witte.

*By the Court.*— Judgment affirmed.

HARTUNG VS. WITTE.

*December 14, 1883 — January 8, 1884.*

EVIDENCE. *(1) Immaterial error.*
DEED: CONDITION: COVENANT: BOUNDARIES. *(2) Conditions subsequent not favored, (3) and void if repugnant to grant. (4) Agreement to maintain fence not a condition. (5) When covenants personal and when run with land. (6) Case stated: deed construed. (7) Estoppel by acquiescence in boundary. (8) Description of land: how lines run.*

1. A party who has introduced incompetent evidence cannot assign as error the admission of precisely the same evidence on behalf of the opposite party.
2. Conditions subsequent are not favored in the law. Technical words do not make a condition if they are controlled and may be otherwise interpreted by the context or matter of the instrument, and they may work a covenant only, according to the intention of the parties.

3. A condition subsequent, so repugnant to the grant as to defeat it utterly, is void.

4. An agreement to maintain a fence between lands granted and those of the grantor is never construed as a condition, but as a covenant.

5. A covenant to maintain a fence already in existence runs with the land; but a covenant *to build* and maintain a fence is personal only.

6. H. owned land adjoining that of G. on the west. The fence between them stood partly east and partly west of the true boundary line, each owner being about equally affected as to the quantity of his land cut off thereby. G.'s barn, however, was found to be wholly or in part upon H.'s land, and the latter therefore conveyed to him a strip of 41-100 of an acre "lying and on the east line of said H's land, . . . *upon the express condition* that the fence around [on] said piece of land is to remain where it now stands, so that the said H. shall have the right to join and connect the fence of his land with the fence of said G., and that said G. shall always keep said fence in lawful repair, and not bring a suit against said H. to recover damages done within G.'s enclosure by beasts belonging to said H.; *and furthermore*, that said G. shall keep the entire fence around the *west line* of his, G.'s, land, in lawful repairs." *Held*, that the part of the deed quoted contains not a condition but two covenants: (1) A covenant, running with the land, but *temporary* in its nature, relating to the fence then in existence and imposing upon the grantee, his heirs, and assigns, the burden of keeping such fence in repair until a fence should be built upon the true line; and (2) a personal covenant (contained in the last clause) relating to the fence *to be built* upon the true line.

7. An estoppel by oral agreement or acquiescence in a wrong boundary can arise only where there is an *uncertainty* as to the true line, and some question, dispute, or controversy about it which can be settled by such agreement or acquiescence. When the true line can be ascertained by a correct survey, it is considered certain.

8. A conveyance of a specified quantity of land described as lying on the boundary line of another tract, will be construed as conveying a strip parallel to such boundary line and of sufficient uniform width to make the exact quantity called for in the grant.

APPEAL from the County Court of *Milwaukee* County.

Action of trespass *quare clausum fregit*. The facts are sufficiently stated in the opinion. The jury returned a special verdict, as follows:

"1. Did the defendant enter upon the premises which are claimed by the pliantiff to have been in her possession, in the month of April, 1882, and dig post-holes thereon? *A.* Yes.

"2. Did the defendant dig any holes west of the post which was placed by the county surveyor to indicate the line between him and the plaintiff? *A.* No.

"3. Did the defendant dig holes west of the fence between him and the plaintiff? *A.* Yes.

"4. Has the plaintiff been in the quiet and peaceable possession, with a claim of title, of all the land west of the fence between the parties, for twenty years and more before the beginning of this action? *A.* Yes.

"5. What damages, in case the court should finally decide that the plaintiff is entitled to recover, has the plaintiff sustained? *A.* Six cents.

"6. Has the defendant used and occupied a strip west of the fence as the same now stands, during the period in which he has lived upon the premises where he now lives? *A.* No."

Both parties moved for judgment upon the verdict. The motion of the defendant was granted, and from the judgment entered accordingly, dismissing the complaint, the plaintiff appealed.

For the appellant there was a brief by *Austin & Runkel*, and oral argument by *Mr. Austin*.

For the respondent there was a brief by *Flanders & Bottum*, and oral argument by *Mr. Flanders*.

ORTON, J. In 1856 one Stephen A. Hubbel owned 14.06 acres of land lying between the Fond du Lac road on the north, and the Lisbon plank road on the south, and the sec-

tion line on the east, and the land of the plaintiff on the
west, and built a fence on what was supposed to be the west
line of his tract, and the east line of the land of the plaintiff.
In 1865 William Gerlach became the owner of said 14.06
acres and either built a barn or had a barn, on or near his
west line, which he found was in whole or in part upon the
land of the plaintiff, and for that reason he purchased from
the plaintiff a strip of land of 41-100 of an acre lying along
his west line, and described in the quitclaim deed executed
in 1866 by the plaintiff and her husband to him, as follows:
"Land lying and on the east line of said Theodore Hartung's
land, between the Lisbon plank road and the Fond du Lac
road, and bounded on the east by the land owned by Ger-
lach, and on the west by the land of Hartung." Following
the granting part of this deed is the following condition or
covenant, viz.: "*Upon the express condition* that the fence
around [on] said piece of land is to remain where it now
stands, so that the said Hartung shall have the right to join
and connect the fence of his land with the fence of said Ger-
lach, and that said Gerlach shall always keep said fence in
lawful repair, and not bring a suit against said Hartung to
recover damages done within Gerlach's enclosure by beasts
belonging to said Hartung; *and, furthermore*, that said Ger-
lach shall keep the entire fence around *the west line of his*,
*Gerlach's, land*, in lawful repairs." This same fence first
mentioned has been kept up and maintained for over twenty
years, on or near the west line of the 14.06-acre tract, and
still remains as it was, and the respective owners have occu-
pied and cultivated the land on either side of it all that time.
Before this suit was brought, the defendant, who is the
grantee of Gerlach, had the land surveyed by the county
surveyor, and found that the west line of the said 41-100 of
an acre was some distance west of said fence, and thereupon
he dug post-holes in such line, preparatory to building a fence
thereon; and for this pretended trespass this suit is brought.

Hartung vs. Witte.

The testimony introduced by the defendant of the circumstances which led to the purchase of this 41-100 of an acre, and the reasons therefor, which were that a part of the barn of Gerlach was standing upon the land of Hartung, and that the fence was not on the true line in respect to such barn, which was objected to by the plaintiff's counsel, might not have been strictly competent if it had not been already introduced by the plaintiff. The deed as a conveyance needs no explanation or construction from surrounding circumstances, for it is perfectly plain and clear in itself, with no uncertainty or ambiguity. But the plaintiff testified that the defendant " never claimed that she did not own to · the fence. His barn was standing on our land and we deeded him 41-100 of an acre for that reason. He never claimed the barn was not on our land. There was *no quarrel about it.*" The defendant's witness Gerlach, when asked the circumstances under which he purchased this narrow strip of land, said, " The barn stood west of the place where they said his line was." " Hartung claimed that his (witness's) barn was over the line and stood on his land." The witness stated further that he and Hartung had always occupied and cultivated up to and on either side of the fence, and that he supposed the fence was on the line of the 14.06 acres, but that he found out that it was not. The plaintiff had already testified that the parties had always so occupied and culti= vated. The testimony was quite immaterial and irrelevant; but after the plaintiff had gone into this inquiry, and introduced this evidence, an assignment of error on account of precisely the same testimony on behalf of the defendant, because incompetent, comes with poor grace from that side of the case. The objection under such circumstances is too· technical and unfair to be further noticed. But the plaintiff testified that the deed to this strip of 41-100 of an acre was, made to Gerlach for the reason that his barn stood partly;. at least, on her land. The reason was, then, in order that

he, Gerlach, might own the land on which his whole barn stood that he made the purchase of this strip. That evidence, at least, is in the case, and the plaintiff cannot complain of it, and it made it no stronger when the testimony of the defendant was only to the same effect. This evidence can have no effect in explaining the deed itself, for it is *certain* without it; but it may have some effect, and properly so, perhaps, in construing that clause in the deed called therein a condition, for as to that there may be some ambiguity and uncertainty. Another fact may be considered in the case, and that is, that the fence spoken of and mentioned in that clause of the deed, did not stand on the exact west line of the 14.06 acres which Gerlach owned before he purchased the 41-100 of an acre adjoining. This is clearly shown by the plat in evidence. In some places it was on the line, and at others it was west and east of the line a short distance, and both parties seem to have been affected by this deviation to about the same extent, in respect to the true line, in the quantity of land belonging to each cut off by the fence. The present defendant is the grantee of Gerlach of the 14.06 acres and the 41-100 of an acre by the same deed.

We are now led to the first question in the case, and that is the construction of the above so-called condition. It is surprising that no construction of it was attempted by the county court or any effect given to it, and that no question concerning it has been raised or argued by counsel. If it is a *condition* subsequent, as the language imports, then the defendant may have forfeited any right he may have in this narrow strip of land by an attempted removal of the fence. If it is construed as a *covenant*, and not as a condition, and such covenant runs with the land and binds the heirs and assigns of the grantor, such attempted removal of the fence may have been in violation of such covenant, and unlawful. If the first clause of this so-called condition, construed, however, as a covenant, is only to have a *temporary* opera-

tion and effect, and the last clause, which provides for maintaining a fence *on the line* of the grantee's land is the part only which is to have perpetual operation and effect, then the question is important whether any *parol* agreement or acquiescence, or the use and occupation of the land, in respect to the fence standing where it has for so many years, can have the effect of estoppel of the defendant from disputing that the fence is the true boundary, against such a covenant in the deed. The only important question raised or discussed is that of an equitable estoppel by *parol* and by agreement and acquiescence. That fence is the subject of a condition or covenant in the deed under seal, and, as a boundary, must stand or fall by it, and all parol evidence of an estoppel is incompetent to vary or alter it.

The real question in the case is, What effect is to be given to that clause of the deed? And although not raised in the court below or discussed by counsel, it is nevertheless before us in the case, and must be considered in order to determine whether the verdict of the jury ought to stand. The learned counsel of the appellant contended only that the granting clauses of the deed relating to the description were sufficiently certain to ascertain the precise boundary, and that the testimony admitted on behalf of the respondent, and objected to by the counsel of the appellant, as to the barn and fence, was immaterial and incompetent. He says nothing about the condition in the deed by which even the western boundary of the premises may be fixed, the grant defeated by disturbance of the fence, or, as a covenant running with the land, the respondent may be bound. The learned counsel on the other side relies upon the error in receiving the testimony offered of parol agreement or acquiescence that the line shall be where the fence is, which the grantee bound himself to forever maintain, with a bare allusion to the so-called condition. We shall, therefore, be

compelled to treat the construction of this so-called condition as an original question, without aid from the briefs of counsel.

Before attempting to place a construction upon this clause of the deed, we will state certain well-established principles by which a correct construction of it may be made. This clause is called a condition, and the language clearly imports it, and the general rule in such case is that it shall be construed as a condition, and nothing else (2 Washb. on R. P., 3, *et seq.*); and if it is a condition, it is a condition subsequent, because the grantee is to do and not to do certain things in the future. 2 Washb. on R. P., *supra;* Tiedeman on R. P., 276. But there is no clause of forfeiture. This may be unnecessary where there is no question that the clause is a condition subsequent, for a forfeiture of the estate would follow the breach of it just as well, but this fact has an important bearing upon the question whether the clause is a condition or a covenant, and may be considered, with other matters, in so determining. But the words, "upon the express condition," as here used, or the words, "if it shall so happen," or "provided, however," and the like, do not always make a condition, and it is often a nice question to determine whether it is a condition or a covenant, and courts always construe similar clauses in a deed as covenants rather than as conditions, if they can reasonably do so. 2 Washb. on R. P., 4. A condition or a covenant may be created by the same words; and conditions subsequent are not favored in the law (1 Inst., 203*b;* Willard on R. E., 102–107); and technical words do not make a condition if they are controlled and may be otherwise interpreted by the context or matter of the instrument, and they may serve to work a covenant only, according to the intention of the parties. *Paschall v. Passmore*, 15 Pa. St., 295; *Cromwell's Case*, 2 Rep., 71*a;* 1 L. C. in Am. Law of R. P. (Shars-

wood & Budd), 124; *Chapin v. School Dist.*, 35 N. H., 445; *Hoyt v. Kimball*, 49 N. H., 326; *Wheeler v. Dascomb*, 3 Cush., 285; *McKnight v. Kreutz*, 51 Pa. St., 232.

*First.* This clause is not a condition, so far as it relates to the maintaining of the fence on or near the west line of the 14.06 acres,— the fence now existing,— (1) because, by that line, the grantee, Gerlach, would get scarcely any, if any at all, of the land conveyed by the deed of the 41-100 of an acre, and the effect of that deed would be to utterly defeat the grant, and a condition so repugnant to the grant would be void. 1 Steph. Comm., 281; *G. B. & M. Canal Co. v. Hewett*, 55 Wis., 96. (2) Because there is no clause of forfeiture, and conditions subsequent must be strictly construed against the grantor. *Moore v. Pitts*, 53 N. Y., 85; 2 Washb. on R. P., 4. (3) Because the penalty or compensation for its breach is provided for, rather than a forfeiture. In this clause it is provided that, in case that fence shall not be kept in repair and maintained, and the beasts or domestic animals of the grantor shall pass over the same into the premises of the grantee on that account, he shall not be liable for any damages which they may commit. *Board of Education v. Trustees*, 63 Ill., 204. (4) Because, as we shall see, the last part of the clause provides for *another* fence, to be placed on the true line and maintained there, within a short distance of and nearly parallel to the fence now existing. (5) Because an agreement to maintain a fence between the lands granted and those of the grantor is never construed as a condition, but as a covenant. Sedg. & Wait, Trial of Title, sec. 213. The only exception to this rule (if it is an exception) which I could find, is the case of *Emerson v. Simpson*, 43 N. H., 475. There it was a condition in the very strongest language, with a clause of forfeiture, for the grantee to maintain *forever* a good and lawful fence on the true line, at his (the grantee's) own expense. The language of forfeiture was too strong

for the court to construe it as a mere covenant, and under the rule of strict construction, and inasmuch as the condition did not bind the heirs and assigns, it was held to be a personal agreement, which continued only during the life of the party bound thereby. See, also, on a similar question, *Merrifield v. Cobleigh*, 4 Cush., 184. This could hardly be called an exception, because the case was decided on its own peculiarities, and it was held that it was not a condition subsequent.

*Second.* That part of the clause which relates to the fence then existing is a covenant: (1) Because it is in the body of the deed and under seal. (2) Because it is a real covenant, and runs with the land, and binds the heirs and assigns of the grantee. 1 Hilliard on R. P., 363; 1 Washb. on R. P., 497. It runs with the land because it affects the land granted in the management and conduct thereof, and is not a mere collateral agreement, which is the test of a personal covenant. *Spencer's Case*, 5 Rep., 16a; [1 Smith's L. C., 115]; *Patten v. Deshon*, 1 Gray, 325; *Howland v. Coffin*, 12 Pick., 125; *Van Rensselaer v. Hays*, 19 N. Y., 81; *Cook v. Brightly*, 46 Pa. St., 445; *Scott v. Lunt's Adm'r*, 7 Pet., 606; *Baldwin v. Walker*, 21 Conn., 168; *Crawford v. Chapman*, 17 Ohio, 449; *Plumleigh v. Cook*, 13 Ill., 669; *Bronson v. Coffin*, 108 Mass., 175. Such a covenant operates as a charge upon the estate, and affects the value thereof, (1 Shep. Touch., 140–179), and imposes a servitude upon the land granted. *Brewer v. Marshall*, 18 N. J. Eq., 338; *Dorsey v. St. Louis, A. & T. H. R. R. Co.*, 58 Ill., 65; *Norfleet v. Cromwell*, 64 N. C., 1; *Bally v. Wells*, 3 Wils., 25; *Duffy v. N. Y. & H. R. R. Co.*, 2 Hilt., 496; Platt on Cov., 481; *Beddoe's Ex'r v. Wadsworth*, 21 Wend., 120; *Norman v. Wells*, 17 Wend., 136; 1 Smith's L. C., 115; 2 Kent's Comm., 472; 2 Hilliard on R. P., 371; *Kellogg v. Robinson*, 6 Vt., 276; Tyler on Bound., 344; Hunt on Bound., 50. (3) Because it relates to a fence already *in esse*, and binds the

grantee to maintain and keep it in good repair. A covenant to *build* and maintain a partition fence or party wall does not run with the land and is only *personal*. Platt on Cov., 471; Taylor on L. & T., 301; Williams on L. & T., 290; *Lametti v. Anderson*, 6 Cow., 307; *Thompson v. Rose*, 8 Cow., 266; *Allen v. Culver*, 3 Denio, 284; *Tallman v. Coffin*, 4 N. Y., 136; *Sampson v. Easterby*, 9 Barn. & C., 505; 6 Bing., 644; *Doughty v. Bowman*, 11 Q. B., 444; *Congleton v. Pattison*, 10 East, 138; *Cole v. Hughes*, 54 N. Y., 444.

*Third.* We may now apply these principles to the construction of this clause in the deed. I have said that it is perhaps somewhat uncertain and ambiguous, and so it is upon casual reading and without most critical analysis. We have already seen in the words "upon the express condition," that important words in it are misused and have another meaning than strictly imported by them, and so we may say of the word "around," in the sentences "around said piece of land," in the first part, and "around the west line of his [Gerlach's] land," in the last. This word obviously means *on* in both cases. The language of the first part of the clause or covenant is "that the fence around [on the west side of] said piece of land is to remain where it now stands, so that the said Hartung shall have the right to join and connect the fence of his land with the fence of said Gerlach; and that said Gerlach shall always keep said fence in lawful repair, and not bring a suit against said Hartung to recover damages done within Gerlach's enclosure by beasts belonging to said Hartung." This fence is not on the line of the 14.06 acres, but near it, and varies to one side or the other, but so as perhaps to make but little difference in the quantity of land embraced within the enclosure. The barn of Gerlach, to some extent, is over this line, but probably within the enclosure of the fence. To obtain the land on which the barn stood, this 41-100 of an acre was purchased, according to the testimony of both parties. So that

calling the fence the line of the 14.06 acres, if it is to be also the west line of this additional purchase of the 41-100 of an acre, then nothing whatever, or but little, passed by the deed. By this clause the grantor obtains what is called " the right " to connect his fences with this fence on and over the 41-100 of an acre. This is a license, to all intents and purposes, and estops the grantor, the plaintiff, from questioning the ownership of the 41-100 of an acre strip conveyed by the deed. If this claim is construed to make this fence the west line of the 41-100 of an acre conveyed by the deed, then, as said before, it is clearly void as being re- pugnant to the whole grant. But effect should be given to it if possible and consistent with the whole clause taken together.

To the extent to which this covenant is in respect to the fence existing, according to the authorities, it runs with the land, and binds grantees as well as heirs, and therefore binds the defendant in this suit as the grantee of Gerlach. But there is another and additional covenant in this clause be- ginning with the words " and furthermore," to wit: " and furthermore, that said Gerlach shall keep the entire fence around [on] *the west line* of his [Gerlach's] land in lawful repairs." This cannot be the same fence already spoken of, for it would be but a repetition of the first covenant, and of but a part of it at that, and the word " furthermore " would have no effect. No! It must be another fence, and on the west line of Gerlach's land, including the 41-100 of an acre conveyed by the deed, which Gerlach is bound to keep in lawful repair. That fence was *not* in existence when the deed was made, and, by the above authorities, could not be made the subject of a covenant to run with the land, and in respect to that the covenant was *personal* as between the grantor and grantee. But both fences, according to a literal reading of the clause, are to be maintained and kept in law- ful repair. If both are to be included in the same covenant,

then two fences, on or near the west line of Gerlach's land, only a few feet apart, are to be forever maintained by the grantee, which renders his last purchase of no possible use to him, being a mere lane or strip of waste ground, with the considerable cost of maintaining a fence on each side of it. Such a construction is unreasonable. We think the construction should be that the grantee should keep the fence where it now is, and in lawful repair, and not complain of damage from the grantor if he does not, *for the time being* and until he build a fence on the true west line of his land, and when he has built the same he shall keep that in lawful repair forever; and that, until such last-mentioned fence is built, the grantor shall have the right to carry his fence, even over the land of the grantee, to connect with the fence now in existence on or near the west line of the 14.06-acre tract.

The first clause is only *provisional* to keep the respective premises enclosed until the fence is built on the true line, and to impose upon the grantee the burthen of always maintaining the fence on the west line of Gerlach's land, or between the lands granted and those of the grantor. The building of the fence on the line may be delayed beyond the ownership, or perhaps the life, of the grantee; and if so, the first part of the clause, being a covenant which runs with the land, binds the heirs or assigns of the grantee to keep the existing fence in lawful repair until the fence *on the line* is built. That covenant runs with the land because the fence is in existence when it was made, but the covenant in respect to a fence to be *thereafter* built on the true line is merely *personal*. It follows, therefore, that the grantee, Gerlach, his heirs and assigns, are bound to keep the existing fence in lawful repair until the fence is built on the real line, and after that the covenant is a *personal* one because it relates to a fence not *in esse*. It appears that the defendant was engaged in building a fence on the real line, and

that this was the trespass complained of. How could he maintain a fence there, and keep it in lawful repair, according to the last covenant, unless he is allowed first to build it? There are two separate and distinct covenants in this clause, and to give them both effect, and make them practical and reasonable, this is unquestionably the proper construction of them. It may be said that the present owner, the defendant, is not then bound by the last covenant to build a line fence, and keep it in lawful repair, for that is a personal covenant which does not bind him. But until he does so build a fence on the line he is bound by the covenant to keep the existing fence in lawful repair, for that covenant runs with the land. We think that this construction comports with the design and intention of the parties; only it may be that he who drew the deed supposed the covenant to build the new fence on the line, and keep it in lawful repair, would run with the land, and bind heirs or future owners. It is not the first time such mistakes have been made.

It may be that this construction renders it unnecessary to consider the point and the main point made by the appellant, that the length of time the old fence has been where it is, and the acquiescence of the parties in it as the true line, estops the defendant from questioning it; for this clause of the deed, as so construed, provides for the building of a fence on the true line, thus recognizing it; but inasmuch as that was the main question on the trial, it is thought proper to consider it. The situation of the premises, and the circumstances in view of which the last deed was made, cannot be consulted, or an agreement to treat an existing fence as the line has no force when the true line can be ascertained from the deed itself and by a lawful survey. There must be an *uncertainty* as to the true line, and some question, dispute, or controversy about it which can be settled by such an agreement or acquiescence. In other words, that is cer-

tain which can be made certain, and if the true line cannot be made certain by the deed and a survey, or by the calls and monuments mentioned in the deed, then, only, it may be made certain by an agreement or acquiescence of the parties. There must be such uncertainty as to cause a dispute or controversy of the parties before resort can be had to such evidence. In this deed there is no uncertainty as to the true west line of the premises, and there is no evidence of any question or dispute of the parties concerning it, and both parties know or can ascertain where the true line is. Sedg. & Wait, Trial of Title, sec. 760. It is said in Malone on Real Property Trials, 226: "Under the statute of frauds, it is not competent to make a boundary line by *parol*, except when the same is in doubt and unknown;" citing *Gilchrist v. McGee*, 9 Yerg., 455; 3 Head, 103. "Certainty is the mother of repose," and "that is certain which can be made certain," is an old maxim of the law. Id., 233. "There must be a dispute about the true boundary." Tyler on Bound., 333. Where there is an agreement or acquiescence in a wrong boundary, when the true boundary can be ascertained from the deed, it is treated both in law and equity as a *mistake*, and neither party is estopped from claiming to the true line. *Ibid.*; and *Knowlton v. Smith*, 36 Mo., 507; *Liverpool Wharf v. Prescott*, 7 Allen, 494. When a definite boundary is fixed by the grant it must govern in all cases. Tyler on Bound., 28, 118, 133. When there is an existing fence near the line between two tracts of land, one of which is conveyed, and the true line can be ascertained from the deed, the fence is disregarded. Id., 190; *Law v. Hempstead*, 10 Conn., 23. It is held in *Thompson v. Jones*, 4 Wis., 106, "that a grant which contains particulars sufficiently ascertained to designate with certainty the thing granted, will not be defeated by a false or mistaken circumstance." This general doctrine has been frequently recognized by this court. *Gove v. White*, 20 Wis., 425; *S. C.*, 23 Wis., 282; *Hass v. Plautz*, 56 Wis., 105. In the latter case many

Hartung vs. Witte.

authorities are cited in the brief of the respondent's counsel to that effect, and the question may be considered as at rest in this state. When the true line can be ascertained by a correct survey, it is considered certain. *Coats v. Taft*, 12 Wis., 388; *Colcord v. Alexander*, 67 Ill., 581; *Canal Co. v. Kinzie*, 93 Ill., 415; *Fowler v. The People*, id., 116; *Smiley v. Fries*, 104 Ill., 416.

*Fourth.* The true line between the 41-100 of an acre granted by this deed and the land of the grantor can be ascertained by a survey, and the strip may be run out with parallel lines in square form, to agree with the west line of Gerlach's land and the east line of Hartung's land, to make the exact quantity called for by the deed. This is the established rule in all cases, unless there is something in the grant to make it otherwise. 3 Washb. on R. P., 406; *Jenkins v. Sharpf*, 27 Wis., 472; *Dolan. v. Trelevan*, 31 Wis., 147; *Johnson v. Ashland Lumber Co.*, 47 Wis., 330; and *S. C.*, 52 Wis., 460. The undisputed evidence in this case is that this strip of land has been so surveyed, and the lines so located and fixed according to the deed, and that the defendant's pretended trespass was in attempting to build a fence on the true western line, as so ascertained, by digging post-holes, etc.

From the construction we have given the two covenants in this clause of the deed, it will be readily apprehended that there is no chance of setting up *adverse possession* in the plaintiff, for since the execution of the deed he has held subject to the ascertainment of the true line and building a fence thereon. And there is no chance, either, for the plaintiff to set up acquiescence by parol or equitable estoppel against such special covenants as to the fences existing or to be built. The conclusion, therefore, is that the verdict for the defendant is correct, and there is no material error in the record.

*By the Court.*— The judgment of the county court is affirmed.