CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant, vs. FOX RIVER ELECTRIC RAILWAY & POWER COMPANY, Respondent.

*September 9—September 29, 1903.*

*Street railways: Crossing steam railways: Contract to pay flagman, upon whom binding: "Successors": Sale of equipment: Use of crossing by purchaser: Covenants running with land.*

1. The purchase by a street railway company of the personal property constituting the equipment of an existing street railway, in place, "not including the franchises, leases, contracts, or powerhouse machinery," did not carry with it any obligation to perform a contract by the terms of which the original builder of the street railway had obtained the right to cross the tracks of a steam railway and had agreed to pay the expense of keeping a flagman at such crossing.

2. It appearing that the original builder of the street railway had

182    SUPREME COURT OF WISCONSIN.    [Sept.

Chicago & N. W. R. Co. v. Fox River E. R. & P. Co. 119 Wis. 181.

no valid franchise and no right to the possession of the street,. and that no franchises, leases, or contracts were included in the sale of the equipment to the street railway company, the fact that the latter, in operating its street railway system under its own franchise, used the crossing in question with the equipment purchased there in place, did not render it the successor of the original builder so as to be bound by his contract.

3. Since the agreements in the contract were in their nature personal obligations relating to the operation of the respective railways at the crossing, and it did not grant to the original builder of the street railway any rights to the use of the real estate which were not an incident to a valid franchise for operating a street railway, it cannot be held that the contract was binding upon the street railway company upon the ground that its benefits attach to the fee of the street at the crossing,. which, subject to the public easement, was in the steam railway company.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, JR., Circuit Judge. *Affirmed.*

The respondent's street railway crosses appellant's steam railway on Third avenue, in the city of Green Bay.

By an ordinance of the common council, on August 24, 1894, one David McCartney was granted a franchise to build a street railway in the city of Ft. Howard, now part of the city of Green Bay. He constructed a street railway, which was operated on the streets specified in this ordinance. Appellant railway company is owner in fee of the land abutting on the street where the street railway crosses the track of the steam railway. On November 5, 1894, a contract was executed, under seal, between McCartney and appellant, in which, among other things, it was agreed:

"If at any time hereafter the business of the party of the first part [*C. & N. W. R. Co.*], or the laws of the state of Wisconsin, the ordinances of any municipal corporation of said state, or any other competent authority, or any agreement between the said party of the first part and any municipal corporation of said state, shall make it necessary to station flagmen at said crossing or shall make it necessary or

proper to erect crossing signals or gates thereat, or shall require that said crossing be protected by a system of interlocking or derailing switches and signals, or if in the judgment of the party of the first part the safety and convenience of the parties hereto require that said crossing be so protected, in any such case, the party of the first part shall have the right to employ such flagmen or to establish such signals and gates, and the party of the second part will pay all the wages of such flagmen promptly as the same become due. from time to time."

The contract was made binding upon the heirs, personal representatives, successors, and assigns of the parties. The street railway crossing was constructed after this contract was made. The rails of the steam railway were cut, and the trolley wire crossed over its track and right of way.

On or about July 1, 1899, McCartney's executors sold and conveyed to the McCartney Street Railway & Power Company all the rights, franchises, and privileges granted him by ordinances of the city, and also all his or their interest in the rails, poles, ties, wires, cars, right of way, and all other property and interest belonging to the electric railway. October 20, 1899, the McCartney Street Railway & Power Company conveyed, under a sale, to respondent company, all the rails, ties, wire, poles, cars, switches, turnouts, curves, and other personal property constituting the street railway equipment of this railway, excepting and "not including franchises, leases, contracts, or powerhouse machinery." On September 25, 1899, the city of Green Bay granted respondent the right to extend its line on Broadway, formerly Third avenue.

On March 23, 1900, this action was brought to compel respondent to pay the wages of the flagman at this crossing, under the provisions of this agreement. Respondent operates a trolley railway for carrying passengers. Its tracks cross appellant's tracks on Broadway and Fifth avenue, at the same place on the street where the McCartney Street Railway crossed it when originally constructed. The street existed

184        SUPREME COURT OF WISCONSIN.        [Sept.

Chicago & N. W. R. Co. v. Fox River E. R. & P. Co. 119 Wis. 181.

prior to the time appellant became the owner of the abutting
land. Appellant maintained a flagman at this crossing, as
required by an ordinance, paying him his wages, which re-
spondent refuses to pay appellant. This action is .brought to
recover the same.

*Edward M. Hyzer,* for the appellant, contended, *inter alia,*
that the contract between McCartney and the plaintiff was
supported by many considerations: (1) The seal imports a
consideration. Sec. 4195, Stats. 1898; *Carey v. Dyer,* 97
Wis. 554. (2) The grantee obtained the right to make the
crossing without delay, without litigation, without expense.
(3) The grant was greater than any original right which it
may be conceded for the purposes of argument the grantee
possessed, in that it permitted a particular method of making
the crossing. That contract is binding upon defendant. It
granted to McCartney, his heirs and assigns, an estate in per-
petuity, which he and they might enjoy whether the *locus
in quo* remained a public ,street or not. The covenant to pay
the flagman is a covenant running with the estate conveyed.
It is a covenant touching and concerning the estate conveyed
and relating directly to the enjoyment of it. *Noonan v.
Orton,* 4 Wis. 335; *Wooliscroft v. Norton,* 15 Wis. 198;
*Crawford v. Witherbee,* 77 Wis. 419; *Ecke v. Fetzer,* 65 Wis.
55; *Martineau v. Steele,* 14 Wis. 272, 276. Because the Mc-
Cartney people took possession of the right in question by
grant and delivered such possession to the defendant, and be-
cause the defendant continued to enjoy the McCartney pos-
session, *in the very manner and with the identical appliances
adopted by`the McCartney people in pursuance of the grant,*
and because the defendant had full notice of the contract,
and of the conditions, covenants, and agreements therein con-
tained, and because those covenants, agreements, and condi-
tions run with the estate conveyed, the defendant was bound
by the contract, its conditions, covenants, and agreements.

For the respondent there was a brief by *Greene, Fairchild,*

*North & Parker,* and oral argument by *B. H. Stebbins.* They argued, among other things, that the contract between plaintiff and McCartney was void. There was no consideration for McCartney's promises. Assuming that he had a valid franchise to construct and operate a street railway on and along the street, he could have done just as he did, without any contract. *Southern R. Co. v. Atlanta R. & P. Co.* 111 Ga. 679, 36 S. E. 873, 51 L. R. A. 125; *Chicago, B. & Q. R. Co. v. Beatrice R. T. & P. Co.* 47 Neb. 741, 66 N. W. 830; *Chicago & C. T. R. Co. v. W., H. & E. C. St. R. Co.* 139 Ind. 297, 26 L. R. A. 337, 339; *Chicago, B. & Q. R. Co. v. W. C. St. R. Co.* 156 Ill. 255, 29 L. R. A. 485 and note; *General E. R. Co. v. C. & W. I. R. Co.* 184 Ill. 588, 56 N. E. 963; *New York, N. H. & H. R. Co. v. Bridgeport T. Co.* 65 Conn. 410, 29 L. R. A. 367, 373; *Elizabethtown, L. & B. S. R. Co. v. A. & C. St. R. Co.* 16 Ky. L. R. 42; *Central P. R. Co. v. P. W. & B. R. Co.* 95 Md. 428, 52 Atl. 752; Elliott, Railroads, § 1135; *West Jersey R. Co. v. C., G. & W. R. Co.* 52 N. J. Eq. 31, 29 Atl. 423; Nellis, Street Surface Railroads, 186. Plaintiff's ownership of the fee makes no difference in this respect. *Williams Valley R. Co. v. L. & W. V. St. R. Co.* 192 Pa. St. 552, 44 Atl. 46. The right to cross plaintiff's tracks included a right to cut the rails and to pass the trolley wire over them. *Central P. R. Co. v. P. W. & B. R. Co.* 95 Md. 428, 52 Atl. 752; *West Jersey R. Co. v. C., G. & W. R. Co.* 52 N. J. Eq. 31, 29 Atl. 423. But McCartney had no valid franchise (*Allen v. Clausen,* 114 Wis. 244), and therefore the contract was for a right which he could not lawfully exercise, and any action on it must fail. 15 Am. & Eng. Ency. of Law (2d ed.) 997, 998; *Wight v. Rindskopf,* 43 Wis. 344; *Milwaukee M. & B. Asso. v. Niezerowski,* 95 Wis. 129. In any case the contract does not bind the defendant. It is not an assignee of the contract. *Menasha v. M. & N. R. Co.* 52 Wis. 414, 420; *Hoard v. C. & O. R. Co.* 123 U. S. 222. Nor did it impliedly or by operation of law become

bound.  It bought the materials in use at the crossing, but it
bought no right to keep them there.  That right it had in ad-
vance by its franchise from the city.  McCartney's promises
were not covenants running with the estate purchased and so
binding on defendant, because: (1) The property purchased
had never been owned by plaintiff.  (2) The property pur-
chased was personalty only, and a "covenant can only be an-
nexed to an interest in realty."  8 Am. & Eng. Ency. of Law
(2d ed.) 135; *Morse v. Garner,* 1 Strob. L. (S. C.) 514,
47 Am. Dec. 565.  (3) If the contract gave McCartney an
easement, that easement was not conveyed to defendant.
(4) If a covenant is to pay money only, especially if it is to
pay it in the future or on some contingency, it is *personal,*
and does not run with the land or bind any assignee or suc-
cessor.  *Hartung v. Witte,* 59 Wis. 285, 295; *Menasha v. M.
& N. R. Co.* 52 Wis. 414; *Harkins v. Doran* (Pa. St.), 15
Atl. 928; *Atlanta C. St. R. Co. v. Bagwell,* 107 Ga. 157, 34
S. E. 184, 185; *Gibson v. Holden,* 115 Ill. 199, 208; *Graber
v. Duncan,* 79 Ind. 565; *Kettle River R. Co. v. E. R. Co.* 41
Minn. 461, 6 L. R. A. 111; *Hurd v. Curtis,* 19 Pick. 459;
*Dickey v. Kansas City & I. R. T. R. Co.* 122 Mo. 223, 26
S. W. 685, 687.  The use of the words "successors and as-
signs" in the contract is unimportant.  *Kettle River R. Co. v.
E. R. Co.* 41 Minn. 461, 467; *Gibson v. Holden,* 115 Ill. 199,
208; *Menasha v. M. & N. R. Co.* 52 Wis. 414; *Mygatt v. Coe,*
147 N. Y. 456.  Defendant is not liable as a succeeding cor-
poration.  *Menasha v. M. & N. R. Co.* 52 Wis. 414; *Pennison
v. C., M. & St. P. R. Co.* 93 Wis. 344; *Vilas v. M. & P. du
C. R. Co.* 17 Wis. 497, 502; *Wright v. M. & St. P. R. Co.* 25
Wis. 46; *Hoard v. C. & O. R. Co.* 123 U. S. 222; *National
F. & P. Works v. Oconto C. W. S. Co.* 105 Wis. 48, 56.

SIEBECKER, J.  The respondent, as purchaser of the prop-
erty, by contract with the McCartney Street Railway & Power
Company of August 21, 1899, and a conveyance of it on Oc-

tober 20, 1899, did not expressly undertake to perform the conditions of the agreement upon which the appellant bases its right to recover in this action. The agreement of sale and the conveyance were in terms of personal obligations, binding upon the parties only. They express nothing to indicate that the parties intended respondent should be required to pay the expense of a flagman provided for in the original agreement between appellant and David McCartney, the original builder and operator of the street railway. Respondent apparently sought to avoid assuming any of the obligations which were cast upon David McCartney for the maintenance of this crossing. It was specifically agreed that the purchase thus made was to include all the rails, ties, wire, poles, cars, switches, turnouts, curves, and other personal property constituting the equipment of this street railway, but stipulating that the transfer thus made was "not including the franchises, leases, contracts, or powerhouse machinery."

Then, again, the agreement conveys nothing but the personal property therein described. The sale of this personal property to respondent could not transfer any burden, duty, or obligation imposed on McCartney as a party to the contract, unless it assumed such burden, duty, or obligation as assignee.

That respondent was not the assignee sufficiently appears. Can it be said that it was the successor of David McCartney in operating its street railway system over this crossing? This view is met with the unsurmountable objection that McCartney had no valid franchise, nor any right of possession to the street, and that no "franchises, leases, contracts, or powerhouse machinery" were attempted to be transferred and conveyed to respondent. The respondent had a franchise from the city to operate and maintain a street railway over and upon the streets of the city at the place of crossing. The right to possession of the street under its own franchise and to maintain a street railway system is unquestioned. Its purchase

of the personal property of the former company in place on the street, using and occupying the same place, while operating its street railway system, under its franchise, is no legal basis for holding it assumed the former owner's right of occupancy in the street at the place of crossing, and thereby had cast upon it the burden of paying the expense of maintaining this crossing. *Menasha v. M. & N. R. Co.* 52 Wis. 414, 9 N. W. 396; *Wabash, St. L. & P. R. Co. v. Ham,* 114 U. S. 587, 5 Sup. Ct. 1081; *Wright v. M. & St. P. R. Co.* 25 Wis. 46.

The appellant asserts that the agreement is one which in legal contemplation must have been intended by the parties to be perpetual, and its benefits attach to the fee of the land over which the street railway is constructed and operated. The contract is primarily concerned as to operating the two railroad properties, where both rightfully pass over this place in a public street. The fact that the steam and street railways occupy the same place on the land emphasizes the legal result that these railways on the land are entirely distinct and independent properties—a transfer of either or both of the railway properties would in no way affect the interest in the land over which they pass, nor would a conveyance of the land necessarily affect their right to the use of this place upon it.

The agreements embraced in the original contract were in their nature personal obligations, pertaining to the conduct of the respective railway enterprises, and did not attempt to grant any rights to the use of the real estate to McCartney which were not an incident to a valid franchise for operating a street railway. The right to use this land at the crossing does not arise out of this contract, nor can it be said that such use by the two railways is an interest in or annexed to the realty, but it is in its effect collateral and independent of the land as regards the tenure and enjoyment thereof. *Hartung v. Witte,* 59 Wis. 285, 18 N. W. 175; *Menasha v. M. & N. R. Co., supra; Kettle River R. Co. v. E. R. Co.* 41 Minn.

461, 43 N. W. 329; *Wiggins F. Co. v. O. & M. R. Co.* 94 Ill. 83; *Morse v. Garner,* 1 Strob. 514.

The foregoing conclusion is based on the assumption that the contract between appellant and David McCartney was valid. This is challenged by respondent. The view we have taken of the case makes it unnecessary to discuss this question. We must hold that the contract in question was not binding on respondent.

*By the Court.*—The judgment of the circuit court is affirmed.