LAKE GENEVA BEACH ASSOCIATION, Respondent, vs. ANDERSON, Appellant.

*March 12—May 1, 1945.*

598

For the appellant there was a brief by *Godfrey & Pfeil* of Elkhorn, and oral argument by *Richard H. Pfeil*.

*Lewis G. Brown* of Lake Geneva, for the respondent.

MARTIN, J. The defendant acquired lots 3, 4, and 5 of Lake Geneva Beach Subdivision by written contract before the recording of the plat in June, 1925. In 1928 defendant completed his payments and procured a warranty deed to said lots. The dispute concerns the boundary line between defendant's lot 5 and the "community park." Defendant has occupied the area in question since 1925. His right to do so has been questioned for several years, his fence destroyed and rebuilt. The fact that the boundary line was questioned has been a matter of common knowledge for several years.

The Lake Geneva Beach Subdivision comprised property known as the "Emery estate," title to which was acquired by Jones & Winter Company, a real-estate firm, and John Jesperson. Jones & Winter Company employed Stanley Jones and W. H. Savery to subdivide and sell the Emery estate property. In April, 1925, Stanley Jones and W. H. Savery took defendant and his wife to the property to sell them a lake-shore lot. The property was not then subdivided. Defendant agreed to purchase a sixty-foot parcel of land on which the Emery house was located. This parcel of land was pointed out by Jones and Savery on the ground and located by reference to certain fixed objects. A few days later defendant and his wife went back with Jones and Savery and at this time defendant agreed to buy from the Jones & Winter Company another lot which adjoined the first lot on the west. The plat had not been completed. Defendant was told that a park would be platted to the immediate west of the land he was purchasing. In purchasing the additional land defendant wanted to acquire all of the lake-shore property between the

parcel on which the Emery house was located and the east line of the proposed park.

Defendant insisted that the west boundary line of the land he proposed to buy be pointed out and established on the ground. The line was staked out. A certain tree stood in the boundary line thus established. Defendant made a down payment, and two or three weeks later signed the land contract. The land contract described the property as "lots 3, 4, and 5 in the subdivision to be hereafter known as Lake Geneva Beach Subdivision."

In 1926 Jones & Winter Company constructed a woven-wire fence on the boundary line established at the time the land was sold to defendant. At this time Jones & Winter Company held title to all the land west of the so-called established line, including the part which afterwards became known as "community park." Defendant did some landscaping and planted shrubbery along the west side of the fence line, and in 1928 he replaced the fence built by Jones & Winter Company. It stands on the same line on which the original Jones & Winter fence was built.

Defendant contends that because his west boundary was indicated and marked upon the ground by stakes and a certain tree the land so marked off controls the description in his land contract and warranty deed. In his pleadings he alleges ownership of lots 3, 4, and 5 in the Lake Geneva Beach Subdivision. There is no agreement or memorandum in writing to sell and convey any land except said three lots. These lots had boundary lines which were definite, fixed, and monumented.

In *Hartung v. Witte,* 59 Wis. 285, 298, 18 N. W. 175, the court said:

"The situation of the premises, and the circumstances in view of which the last deed was made, cannot be consulted, or an agreement to treat an existing fence as the line has no force when the true line can be ascertained from the deed itself and by a lawful survey. There must be an *uncertainty* as to the

true line, and some question, dispute, or controversy about it which can be settled by such an agreement or acquiescence. In other words, that is certain which can be made certain, and if the true line cannot be made certain by the deed and a survey, or by the calls and monuments mentioned in the deed, then, only, it may be made certain by an agreement or acquiescence of the parties. There must be such uncertainty as to cause a dispute or controversy of the parties before resort can be had to such evidence. In this deed there is no uncertainty as to the true west line of the premises, and there is no evidence of any question or dispute of the parties concerning it, and both parties know or can ascertain where the true line is. . . . 'Under the statute of frauds, it is not competent to make a boundary line by *parol,* except when the same is in doubt and unknown.' . . .''

In *Elofrson v. Lindsay,* 90 Wis. 203, 205, 63 N. W. 89, the court said :

"Where the description of the premises in a deed is definite, certain, and unambiguous, extrinsic evidence to show acquiescence in a different location is inadmissible, unless such practical location is followed by an adverse possession for such a length of time as to bar an action for the recovery of the lands. . . . It is only in cases where the description in the deed is uncertain and doubtful that evidence of a practical location, followed by adverse possession, is competent to show the intention. When a definite boundary is fixed by the grant, it must govern in all cases. *Hartung v. Witte,* 59 Wis. 285, 290, 291 [18 N. W. 175]. This doctrine is recognized in many cases. *Messer v. Oestreich,* 52 Wis. 684 [10 N. W. 6] ; *Whitney v. Robinson,* 53 Wis. 309 [10 N. W. 512] ; *McMillan v. Wehle,* 55 Wis. 685 [13 N. W. 694] ; *Coe v. Manseau,* 62 Wis. 81 [22 N. W. 155] ; *Meade v. Gilfoyle,* 64 Wis. 18 [24 N. W. 413] ; *Lundgreen v. Stratton,* 73 Wis. 659 [41 N. W. 1012]." See also *Pickett v. Nelson,* 79 Wis. 9, 12, 47 N. W. 936; *Lind v. Hustad,* 147 Wis. 56, 59, 132 N. W. 753.

Defendant makes no claim of having acquired any right or interest in the parcel of land in question by an adverse possession.

Defendant contends that because the plat was not recorded at the time the land contract was executed the description is rendered uncertain, and therefore extrinsic evidence of the practical location of the boundary becomes material. Counsel cites no authority for this proposition and we have found none. By the terms of the land contract defendant was to acquire lots 3, 4, and 5 of the plat. When he completed payment of the purchase price and received his deed in 1928, said three lots were thereby specifically conveyed to him.

Defendant makes the further contention that if he did not acquire legal title to the parcel of land in dispute he did acquire an equitable interest which plaintiff is estopped to deny. In *Hartung v. Witte, supra,* page 299, the court said:

"Where there is an agreement or acquiescence in a wrong boundary, when the true boundary can be ascertained from the deed, it is treated both in law and in equity as a *mistake,* and neither party is estopped from claiming to the true line."

*By the Court.*—Judgment affirmed.