MENZNER and wife, Respondents, vs. TRACY, Appellant.*

*May 16—June 15, 1945.*

* Motion for rehearing denied, with $25 costs, on September 11, 1945.

*Joseph Witmer* of Appleton, for the appellant.

For the respondents there was a brief by *Benton, Bosser, Becker & Parnell,* and oral argument by *David L. Fulton* and *Edgar E. Becker,* all of Appleton.

FOWLER, J.    The plaintiffs brought action to quiet in them the title to a parcel of land which included a certain parcel sixty feet wide, herein referred to as lot 1, and a strip of land adjacent thereto on the north.   The plaintiffs concededly have the record title to lot 1.   The defendant has the record title to the south ninety feet of lot 2 adjacent to lot 1 on the north which includes the disputed strip, and counterclaims in eject-ment to recover possession of it.   The plaintiffs claim to have

acquired title to the strip by adverse possession by themselves and their predecessors in possession for more than twenty years.

The record title of both parties stems from Agatha Ertl. The title to lot 1 runs from her by deeds to Sturm, 1893, to Peske, 1897, to Menzner by sheriff's deed in partition, 1939. The title to lot 2 runs from Ertl by deeds to Wolff, 1896, to Hackl, 1901, to Tracy, 1927. Menzner first got possession from Peske under lease in 1929; thence under lease from Mrs. Peske as surviving joint tenant and from Mrs. Peske's devisees; and thence under sheriff's deed through sale in partition brought by the devisees. The Menzner's claim of title by adverse possession springs from Peske's possession, and it is conceded that that possession if adverse was transferred successively to the Menzners and ripened into title and may be tacked on to the possession of Menzner to make up the prescriptive period, unless the succession was broken because the sheriff was never in possession. *Clithero v. Fenner,* 122 Wis. 356, 99 N. W. 1027; *Illinois Steel Co. v. Paczocha,* 139 Wis. 23, 119 N. W. 550.

There are dwelling houses on each lot fronting on Prospect avenue, a street running northeast and southwest. At the rear is Outagamie street, running north and south. The dwelling house on lot 1 was built by Sturm. Sturm afterwards built a barn, sometime prior to 1897. Lot 2 was then owned by Ertl or by Wolff who got the title in 1896. The adverse possession claimed stems from the erection of this barn. Mrs. Sturm testified that her husband in building the barn intended to and supposed he did place it entirely within the sixty feet in width that he knew lot 1 comprised. He in fact so placed it, as the jury and the court found, that the north side extended over the true line of lot 1 on to lot 2 approximately two and five-tenths feet at the northeast corner and five feet on the northwest corner. In placing the barn he lined the north side up with the north side of the house he

had previously built. No objection appears to have been made by the owner of lot 2 to this intrusion. The inference is warranted from this that this owner also supposed the barn was placed wholly within the true line. Thus both of the adjoining owners mistakenly supposed that the true line between the two lots was just north of the north side of the barn. Later during Hackl's ownership of lot 2 he built a fence attaching the easterly end of it to the southwest corner of a barn he had built with the south side six or eight inches from the north side of the barn built by Sturm and extending it westerly to or near to Prospect avenue, lining it up with the south side of his barn. His purpose in building the fence was to inclose his chickens within lot 2. The inference is warranted that he supposed his barn and consequently his fence was on the true line. Peske then owned and was living in the house on lot 1. The inference is warranted that Peske supposed the barn and fence were on the true line and recognized and acquiesced in the fence being on the true line. Ever after the erection of the fence as long as it stood Peske kept a garden and planted shrubs clear up to the fence; and after it was taken down by Hackl, Peske on the one side and Hackl on the other kept gardens up to the line the fence had occupied; and after Hackl conveyed to Tracy in 1927, Tracy on the one side as owner and Menzner on the other as successive tenant of Peske, Mrs. Peske and her devisees kept gardens up to that line.

The jury and the trial court inferentially found and might properly find from the evidence that the fence and the line between the Sturm and Hackl barns was mistakenly supposed to be and was accepted and recognized by the adjoining owners as being the boundary line between the properties. The Sturm barn stood as originally placed until Menzner tore it down in 1934 and built a garage on the site of it, placing the north side of the garage just south of the post on which the north side of the barn had set as the jury and the court inferentially

correctly found under the evidence. The facts being as above stated the case is ruled by *Krembs v. Pagel,* 210 Wis. 261, 246 N. W. 324, wherein it is held that a party's possession and occupancy with accompanying acquiescence of the adverse party's predecessors in title for more than twenty years up to the line he and his grantor regarded as the correct boundary line, settled the location thereof and the ownership of a disputed strip, regardless of whether the line was located with absolute accuracy on the true line. The acts here involved are fully as indicative of adverse possession and notice thereof as those involved in the *Krembs Case, supra.*

The rule of the *Krembs Case, supra,* is in accord with a note entitled "Adverse Possession—Mistake in Boundary," in 97 A. L. R. at page 15, on page 81 of which is a heading "Building encroachments as indicating adverse possession." Under this heading it is stated on page 82 as follows:

"The weight of authority is to the effect that one who remains in continuous, open, and exclusive possession of a building of a permanent nature, which projects over the boundary line, during the statutory period of time in which actions to recover possession of real property may be maintained, acquires title by adverse possession to that portion of the adjoining property covered by the structure, though the building was erected in ignorance of the location of the true boundary line, and supposedly upon land rightly owned by the builder."

Decisions of twenty-six states, including the *Krembs Case, supra,* are cited in support of the text quoted. Decisions of twelve states are cited to the contrary. In four of the latter there are decisions both ways.

As to the garden kept by Peske, on page 79 of the A. L. R. note above cited is a heading: "Possession acquiesced in as adverse." Under this heading cases from seventeen states, including the *Krembs Case, supra,* are cited to the proposition

that possession up to a line recognized and acquiesced in as a boundary line is adverse as against the adjoining owner.

We consider the rule of this state is settled by the *Krembs Case, supra,* to be as stated in the above quotations from the A. L. R. note cited.

As to the contention of defendant that the sheriff's deed broke the continuity of the adverse possession, we consider that it did not have that effect. The strip was in possession of Peske during his life, in Mrs. Peske's as surviving joint tenant after his death, and after Mrs. Peske's death in that of her executor or her devisees, and then in possession of the receiver in the action brought to partition the property among her devisees. While Menzner was in actual possession of the property he could not dispute the title of his respective landlords and his possession was constructively theirs. They all acquiesced in the use of the property up to the line and their constructive possession was through their acquiescence adverse. The sheriff's deed merely operated to transfer their adverse possession to Menzner and gave him the right to tack their adverse possession on to his own, which was obviously intentionally adverse. *Mortenson v. Murphy,* 153 Wis. 389, 141 N. W. 273; *Stalcup v. Lingle,* 76 Ind. App. 242, 131 N. E. 852. The privity necessary to exist to enable possessory rights to be transferred is merely a succession of relationships to the same thing. The relationships of Peske, his wife, the executor, and the receiver to the adjoining owner were all the same, and the sheriff's deed by operation of law passed the possessory rights resulting from that relationship. *Illinois Steel Co. v. Budzisz,* 106 Wis. 499, 515, 81 N. W. 1027, 82 N. W. 534.

Appellant raises the point that the answer of the jury to the first question decided the case in her favor because by that finding the jury decided that the plaintiffs did not acquire title to the premises described in the complaint. The practice here involved was used in *Krembs v. Pagel, supra,* as what was

done here was done there. The action was ejectment to recover a described strip of land claimed to have been acquired by adverse possession. A question was put covering the whole of it, which was answered "No" and another covering part of it which was answered "Yes." As the court set aside the answer "No" and gave possession to the entire parcel claimed, the case does not perhaps constitute a precedent for the course here taken. But the common sense of the practice speaks for itself. Moreover, the evidence having been all received without objection and supporting the findings of the jury, the complaint may be deemed amended to conform to the findings. *Lindsley v. Farmers Exchange Investment Co.* 223 Wis. 565, 271 N. W. 364; *Duffy v. Scott,* 235 Wis. 142, 292 N. W. 273; *Forkenbridge v. Excelsior Mut. B. & L. Asso.* 240 Wis. 82, 2 N. W. (2d) 702.

*By the Court.*—The judgment of the municipal court is affirmed.

The following opinion was filed September 11, 1945:

Fowler, J. (*on motion for rehearing*). The appellant's principal contentions on the motion for rehearing are that the decision is contrary to two prior decisions of the court. One of these is that the opinion, which bases the decision on the fact of adverse possession by the plaintiffs up to a line accepted and acquiesced in by the parties as the boundary between adjacent properties, is contrary to *Lake Geneva Beach Asso. v. Anderson,* 246 Wis. 596, 18 N. W. (2d) 493. That this case is not in point appears from par. 2 of the syllabus which expressly excludes from the rule of the case as to boundaries cases in which adverse possession has been maintained for the prescriptive period.

The other case relied on is *Bank of Eagle v. Pentland,* 197 Wis. 40, 221 N. W. 383. The last sentence of the opinion in this case states that "The sheriff's deed [in a foreclosure case] cannot perform this function [of tacking successive pos-

sessions] because of the fact that the mortgage upon which it was based did not cover the land here in question." This case also is not in point because no privity existed between the successive occupants of the land involved (opinion, p. 42), and because the evidence showed "simply occupancy" (opinion, p. 41). Here privity did exist and the evidence showed more than "simply occupancy." The evidence showed the circumstances under which adverse possession commenced and was maintained. It also showed that the defendant Florence Tracy herself acquiesced in the boundary derived from the acts of the abutting owners relating to the Sturm barn by advertising the parcel for rent by her as receiver in the partition suit as comprising the garage occupied and kept by Menzner.

It is urged in this connection that after the death of Mrs. Peske the relation of landlord and tenant existed between Mrs. Tracy as landlord and Mr. Menzner as tenant; that sec. 330.11, Stats., which provides that a tenant's possession is deemed to be that of the landlord for ten years after the tenancy terminates prohibits Menzner from claiming adverse possession until he took the sheriff's deed in 1939 which terminated his tenancy, and hence the prescriptive period required to give Menzner title by adverse possession has not run. This relation is claimed to have existed from the death of Mrs. Peske in 1938 to the receipt of the sheriff's deed by Menzner because Mrs. Tracy is one of the eight children to whom Mrs. Peske bequeathed and devised, in the language of her will "all my [her] estate." Conceding that Mrs. Tracy was thus the owner of a one-eighth interest in the strip in dispute during the interim stated, she was also the owner of the south ninety feet of lot 2 which comprised the strip. Her title thereto came through the death of her husband in 1942, who under the Hackl deed was joint tenant with her. Warren Menzner claims to have acquired by adverse possession the entire title to the strip that passed to Mrs. Tracy on the death of her husband, not the title

to a one-eighth interest therein that passed to her under the will. The latter title passed to Menzner under the sheriff's deed in the partition suit. The former title claimed to have been acquired by adverse possession is the title vested by the Hackl deed and was acquired by adverse possession just as effectively as it would have been had it been in Mrs. Tracy's husband alone. The statute is merely in aid of the rule of law that a tenant cannot dispute his landlord's title. The relation of landlord and tenant existing between Mrs. Tracy and Menzner was in connection with the title to lot 1. The Menzners do not dispute that title, but are relying on it. The statute therefore does not apply to the instant situation.

It is also claimed that the strip of land in controversy is a part of the Tracy homestead and that sec. 235.01, Stats., provides that the title thereto could only be acquired by an alienation participated in by both husband and wife. The language of the statute relied on is that "no mortgage or other alienation by a married man of his homestead . . . by deed or otherwise, without his wife's consent, evidenced by her act of joining in the deed, mortgage or other conveyance, shall be valid or of any effect." The word "alienation" as here used means a transfer by the husband by some form of written conveyance signed by the wife. This is indicated by the caption to ch. 235, Stats., "Alienation by Deed," and also by the phrase "evidenced by her [the wife's] act of joining in the deed, mortgage or other conveyance." Here the strip was not transferred by deed. Alienation of real estate is the transfer of the ownership of it by the owner "either by bargain and sale, or by some conveyance, or by gift or will." 3 Words and Phrases (perm. ed.), 99, 100, and cases cited. Cases of "alienation of homestead" are stated in 3 Id. 108. They all refer to some form of written transfer by the husband.

Counsel complain that the court did not consider specific points made by the appellant in her brief and argument. These

252d

points go to items of evidence rather than the questions of ultimate fact of adverse possession submitted to the jury. We stated in the opinion that we consider that the answers of the jury to these questions are supported by the evidence, and we think this was sufficient without referring to items of evidence except such as we considered were controlling in support of the jury's finding, although our statement of these items was meager. We did not fail to consider the omitted items. The jury might give them only such weight as they deemed them entitled to in determining the question submitted to them and we must assume that they gave them such weight.

*By the Court.*—The motion for rehearing is denied with costs to the respondent.